**City of Saint Paul v. Donald Evans, et al, Case No. A97-0181 CV (HRH)**

**CONSENT JUDGMENT**

**EXHIBIT A**

1.      Agreement for the Small Boat Harbor Project
        Saint Paul Island, Alaska

|  |  |
|---|---|
| Exhibit A | Corps' August 11, 2006 letter to DTX' Legal Counsel |
| Exhibit B1-B6 | Maps of Village Cove Harbor |
| Exhibit C | Corps' February 6, 2007 letter to Linda Snow, City Manager |
| Exhibit D | Tidelands Lease from City to Tribe |
| Exhibit E | Resolution No. PZ-07-01 of the Planning and Zoning Commission of the City of Saint Paul |
| Exhibit F | Resolution No. 07-03 of the City Council of the City of Saint Paul |
| Exhibit G | Unanimous Action by the Board of Directors of TDX |
| Exhibit H | Action by Majority of Tribal Council Members |
| Exhibit I | Ordinance No. 07-07 of the City Council of the City of Saint Paul |

2.      Letter from Terrance A. Turner to Ronald L. Baird dated December 5, 2007

3.      Letter from Linda L. Snow to Terrance A. Turner dated December 7, 2007

4.      City of Saint Paul Resolution No. 07-12 dated December 28, 2007

# AGREEMENT FOR THE SMALL BOAT HARBOR PROJECT – SAINT PAUL ISLAND, ALASKA

between

**Tanadgusix Corporation,**
an Alaska native corporation,

**City of Saint Paul,**
an Alaska municipal corporation,

and

**The Aleut Community of Saint Paul Island,**
a federally recognized tribal entity organized under the Indian Reorganization Act

**Effective Date:**

October 31, 2007

# Table of Contents

<i>Page</i>

Parties.................................................................................................................................1

Recitals...............................................................................................................................1

Consideration ....................................................................................................................1

Terms and Conditions .......................................................................................................1

1.    Recitals..................................................................................................................1

2.    Corps Required Interests.......................................................................................2

3.    Tidal Pool..............................................................................................................2

4.    Westerly Breakwater.............................................................................................2

5.    Uplands-Tidelands Boundary. ..............................................................................2

6.    Dredged Materials.................................................................................................3

7.    Tribal Area and Tribal Dock.................................................................................3

8.    Easements Vacation and Relocation.....................................................................4

9.    Appraisal Waiver. .................................................................................................5

10.   Litigation Partial Settlement. ...............................................................................5

11.   Closing. .................................................................................................................5

12.   Title, Possession and Entry. .................................................................................6

13.   Authorization. .......................................................................................................6

14.   City Representations, Warranties and Covenant. .................................................6

15.   City Defense/Indemnity. .......................................................................................7

16.   Corps Positions. ....................................................................................................7

17.   General Provisions.................................................................................................7
      17.1.   Entire Agreement.......................................................................................8
      17.2.   Notices. ......................................................................................................8
      17.3.   Limited Waivers.........................................................................................8
      17.4.   Partial Invalidity........................................................................................9
      17.5.   No Fiduciary Duty. ....................................................................................9
      17.6.   Limited Third Party Beneficiaries. ..........................................................10
      17.7.   Applicable Law. .......................................................................................10
      17.8.   Default.....................................................................................................10
              17.8.1. Notice/Cure of Default.................................................................10
              17.8.2. Uncured Default Remedies. .........................................................10
      17.9.   Exclusive Jurisdiction and Venue.............................................................11

17.10. Prevailing Party Entitled to Actual Cost and Actual Attorney Fees.......................11
17.11. Non-Merger...............................................................................................................11
17.12. Real Property Estates. ...............................................................................................11
17.13. No Platting Obligations of TDX. ..............................................................................11
17.14. Assignment and Delegation. .....................................................................................11
17.15. Time. ...........................................................................................................................11

Formation.......................................................................................................................................12

Exhibits

| Exhibit A | Corps' August 11, 2006 letter to TDX' Legal Counsel |
| Exhibit B1-6 | Maps of Village Cove Harbor |
| Exhibit C | Corps' February 6, 2007 letter to Linda Snow, City Manager |
| Exhibit D | Tidelands Lease from City to Tribe |
| Exhibit E | Resolution No. PZ-07-01 of the Planning and Zoning Commission of the City of Saint Paul |
| Exhibit F | Resolution No. 07-03 of the City Council of the City of Saint Paul |
| Exhibit G | Unanimous Action by the Board of Directors of TDX |
| Exhibit H | Action by Majority of Tribal Council Members |
| Exhibit I | Ordinance No. 07-07 of the City Council of the City of Saint Paul |

## Parties

This agreement ("Agreement") is by and between (a) Tanadgusix Corporation, an Alaska Native Village corporation (hereinafter "TDX"), (b) the City of Saint Paul, an Alaska municipal corporation ("City"), and (c) The Aleut Community of Saint Paul Island, a tribe organized under the Indian Reorganization Act ("Tribe").

## Recitals

A.    TDX is the Native Village corporation, the City is the local municipal governmental entity, and the Tribe is the federally recognized tribal entity for Saint Paul Island, Alaska. In 1988 TDX and the City entered into an agreement ("1988 Settlement Agreement"), which (i) finally resolved all land claims between them on Saint Paul Island and (ii) recognized certain land entitlements of the Tribe on Saint Paul Island.

B.    The City and TDX are parties to litigation concerning the 1988 Settlement Agreement in the United States District Court for the District of Alaska at Anchorage entitled *City of Saint Paul v. Donald Evans, et al.*, Case No. A97-0181 Civil ("Litigation"). In the Litigation the 1988 Settlement Agreement has been finally determined (i) to be valid and enforceable against the City by TDX in accordance with its terms and (ii) to have been materially breached by the City. However, matters remain at issue in the Litigation which, among other things, affect land entitlements in the Village Cove Harbor area of St. Paul Island ("Village Cove Harbor").

C.    The Tribe has certain rights and interests in certain uplands in the Village Cove Harbor Area, directly under the Transfer of Property Agreement ("TOPA") dated February 10, 1984, indirectly under the Settlement Agreement, and directly under an Agreement between the Tribe and TDX dated March 5, 1987, as amended ("1987 Agreement").

D.    The City is the local sponsor of a project ("Project") of the United States Army Corps of Engineers ("Corps") involving the construction of General Navigation Features ("GNF") and Local Service Facilities ("LSF") for a small boat harbor ("Small Boat Harbor") in the Village Cove Harbor, which (i) is generally described in the Corps General Reevaluation Report, Saint Paul Small Boat Harbor, dated February 2006 ("GRR"), (ii) has been clarified in the Corps' August 11, 2006 letter to TDX' legal counsel attached as Exhibit A, and (iii) is shown in the maps attached as Exhibit B1-6 ("Map").

E.    The Corps has required the City to acquire certain real property interests in Village Cove Harbor from TDX before it will allow construction of the Project to commence, and the City, TDX and the Tribe have reached the following agreement to satisfy such requirement.

## Consideration

For good, valuable and sufficient consideration received and to be received, including the expected performance of the mutual promises set forth below, the parties agree as set forth below.

## Terms and Conditions

1.    <u>Recitals.</u> This Agreement shall be construed in light of its Recitals and Exhibits, which are incorporated in this Agreement as contractual terms and conditions.

2.    Corps Required Interests.    TDX shall convey to the City, and the City shall accept from TDX, the following real property interests as generally described in a letter to Linda Snow from Linda Arrington of the Corps dated February 6, 2007, a copy of which is attached as Exhibit C, except as otherwise modified by this agreement:

    a.    A perpetual easement for a circulation berm in the area identified as the "Circulation Berm Easement, 0.21± Acres," on Map B-4.

    b.    A temporary right to deposit Dredged Materials (defined in Section 6) and move, store and remove equipment and supplies for and during the construction of, the GNF in the area identified as the Corps "Temporary Work Easement" area on Maps B-1 and B-2.

    c.    A perpetual easement for an access road in the area identified as the "Perpetual Road Easement (Access), .99± Acres," on Map B-6.

    d.    Fee simple title to the surface estate of the area identified as the "Intertidal Beach Area (Tidal Pool), .082± Acres," on Map B-5.

It is a condition to Closing (defined in Section 11) that the Corps shall state in writing that the foregoing interests, together with such other real property interests the City already has, are sufficient for construction of the GNF.

3.    Tidal Pool.    The interest described in Section 2(d) is for the Tidal Pool feature of the Project, which has been relocated and reconfigured as shown in the Map B-5 from its original design shown in the GRR. As between TDX, the City and the Tribe, such relocated and reconfigured Tidal Pool is sufficient mitigation for the impact of the Project on the tidelands shown on the Map. TDX, the Tribe and the City shall use their respective best efforts to urge the Corps, the State of Alaska and all third parties to accept such position.

4.    Westerly Breakwater.    One of the GNFs for the Project is a new break-water that is (a) to be constructed in the easterly portion of Alaska Tidelands Survey 1472 on tidelands that TDX leases from the State, (b) maintained thereafter by the Corps and (c) identified as the "Westerly Breakwater" on the Map. The City shall use its best efforts to support TDX having the exclusive perpetual right to operate a private mooring facility and/or dock along the entire westerly side of the Westerly Breakwater without charge by the City. The City shall use its best efforts to support The Tribe having the (a) exclusive perpetual right to develop and operate a mooring facility and/or dock along the entire easterly side of the Westerly Breakwater without charge by the City, (b) the exclusive perpetual right to develop and operate a private dock and/or mooring facility in the area identified on the Map as the "Tribal Dock" without charge by the City on the same side of the breakwater, and (c) TDX and the Tribe having non-exclusive perpetual access easements for their and their respective designees to, on and across (i) the Westerly Breakwater and (ii) the portion of the Small Boat Harbor identified as the "Entrance Channel" on the Map for such purposes. The City shall not unreasonably restrict or limit the Tribe's operation of the Tribal Dock or use of the Entrance Channel, provided that the Tribe's use of the Entrance Channel does not unreasonably interfere with the public's use of the Entrance Channel.

5.    Uplands-Tidelands Boundary.    To settle a long-standing uplands/tidelands dispute between them, for all present and future purposes as between TDX, the Tribe, the City, and their respective designees, assigns, successors and successors in interest, the legal boundary

("1995 MHWL") between all of the tidelands and the uplands in the entire area shown in the Map is the actual and extended boundary identified as the "1995 MHW (3.0)" on the Map. TDX, the Tribe and the City shall use their respective best efforts to urge the Corps and State to (a) adopt and accept the 1995 MHWL as the legal boundary for all of the uplands and tidelands for the entire Village Cove Harbor area shown in the Map, except for survey instructions for such area which may have already been issued by the State. If, and to the extent that, the Corps and/or State have not accepted, and/or in the future do not accept such 1995 MHWL as the legal boundary and/or if the legal boundary surveyed or to be surveyed by the State for purposes of conveying any tidelands in Village Cove Harbor to the City varies from the 1995 MHWL, then TDX and the City shall each convey by grant deed such uplands and tidelands that it has acquired or has the right to acquire to the other to the fullest extent required to provide the same practical effect as if such 1995 MHWL had been unqualifiedly adopted and accepted by the Corps, State and others as such boundary for all purposes. If the respective areas of the tidelands and uplands defined by the 1995 MHWL boundary increase or decrease as a result of accretion or any avulsive act other than placement of fill by TDX, the City, or their respective assignees, successors, and/or successors in interest, such boundary shall not legally change.

6.      Dredged Materials. The Corps presently intends to require its contractor for the Project to dispose of materials dredged during the Project (together "Dredged Materials") in the Dredged Materials Disposal Area 1 shown in the Map. The City shall (a) use its best efforts to persuade the Corps to dispose of one-half (1/2) of such Dredged Materials at a location(s) on a lot(s) in TDX Subdivision easterly of Polovina Turnpike that is (are) subsequently specified by TDX ("Dredged Materials Disposal Area 2") and (b) convey all of its present and future right, title and interest in such portion of the Dredged Materials to TDX. The City and the Tribe shall be entitled to the other one-half (1/2) of the Dredged Materials for disposal by the Corps in Dredged Materials Disposal Area 1. The City shall (c) use its best efforts to persuade the Corps to dispose a sufficient portion of its one-half (1/2) of the Dredged Materials in the Tribal Area to the level of nearby Polovina Turnpike (e.g. "Haul Road") and (d) convey all of its present and future right, title and interest in such portion of the Dredged Materials to the Tribe. If the State asserts any right, title or interest in such Dredged Materials that are placed in Dredged Materials Disposal Area 2 or in the Tribal Area portion of Dredged Materials Disposal Area 1, the City shall use its best efforts to acquire such interest from the State and convey it to TDX or the Tribe (depending upon which one owns the lands upon which such Dredged Materials are deposited) at no cost.

7.      Tribal Area and Tribal Dock. For all purposes as between TDX, the Tribe and the City:

      a.      The LSF area for the Project is, and will continue to be, as shown on the Maps.

      b.      The Tribe is entitled to (a) fee simple title to the uplands portion of the Tribal Area and Tribal Dock, (ii) a subleasehold interest in the tidelands portion of the Tribal Area and Tribal Dock that is subject to the ATS 1472 lease TDX has with the State, and (iii) a leasehold interest in the tidelands portion of the Tribal Area and Tribal Dock that the City has acquired or may in the future acquire from the State. To achieve this, TDX and the City shall take the following action, respectively:

i.    The City shall lease on the terms set forth in Exhibit D to the Tribe all of the tidelands it acquires from the State that are necessary for the Tribe to enjoy such land entitlements; provided, however, that if any such tidelands have been or will be acquired by the City from the State based upon an upland/tidelands boundary different than the 1995 MHWL (*e.g.*, the 1984 Meander Line), then the City shall convey to the Tribe such portions of such tidelands that lie upland of the 1995 MHWL, and lease to the Tribe on the terms set forth in Exhibit C such portions of such tidelands that lie seaward of the 1995 MHWL.

ii.    TDX shall convey to the Tribe such portions of its uplands that lie upland of the 1984 Meander Line, and sublease (for the remainder of the ATS 1472 original and extended lease terms and for a rent not to exceed One Hundred Dollars ($100) per year) such portions of its ATS 1472 tidelands that lie seaward of the 1984 Meander Line, that are necessary for the Tribe to enjoy such land entitlements.

c.    The Tribe's sole uplands and tidelands entitlements in the area shown on the Map are the Tribal Area and Tribal Dock together with the related access and use rights associated with the Westerly Breakwater that are expressly provided in this Agreement.

d.    No unreasonable restriction or limitation exists or will be imposed by the City or TDX upon the Tribe's access to or use of the "Tribal Area," "Tribal Dock" and/or any other dock or moorage facility which the Tribe may develop on the easterly side of the Westerly Breakwater identified on the Maps.

8.    <u>Easements Vacation and Relocation</u>.  Without any prior requirement, condition, expectation, or agreement, the City's Planning and Zoning Commission and City Council have, after all public hearings, proceedings and due process that may be required by Applicable Law, adopted the resolutions, attached hereto as Exhibits E and F, respectively, which approve:

a.    This Agreement, including all of the conveyancing required by Section 2.

b.    The (i) vacation of the 50' public access easement located along the easterly side of Alaska Tideland Survey 1399 and (ii) relocation of such easement to the tidelands along the centerline of the Ramp.

c.    The (i) vacation of the 50' public access easement located along the easterly boundary of Alaska Tideland Survey 1472 and (ii) relocation of such easement to the tidelands along the centerline of the Westerly Breakwater.

TDX has made applications to the State for approval of the actions specified in Sections 8.b and .c. The Closing of this Agreement is conditioned upon the receipt by TDX from the State of approval of these applications; provided, however, that such approval may be conditioned upon construction of the Ramp and Westerly Breakwater.

        9.     Appraisal Waiver. TDX is aware of its right to receive compensation for its conveyance to the City of the real property interests described in Section 2, pursuant to the City's obligation to comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 and regulations issued pursuant thereto, 49 CFR Part 24. In accordance with 49 CFR §24.108, TDX confirms that it is (a) granting to the City the real property interests described in Section 2for a public purpose and (b) releasing the City from its obligation to obtain an appraisal of or pay for such interests.

        10.    Litigation Partial Settlement. This Agreement is made as a final partial settlement of the Litigation. TDX is hereby settling its counterclaim to entitlement to the portion of Tract B-3 at issue in the Litigation that is located seaward of the 1995 MHWL and its related defenses to the City's claim to such portion of Tract B-3. The City is hereby settling its claim to entitlement to the portion of Tract B-3 that is located upland of the 1995 MHWL and its related defenses to TDX' counterclaims to such portion of Tract B-3, with each party to bear its attorneys' fees and costs with respect to such partial settlement. Except as is otherwise expressly provided in this Agreement, TDX is not waiving, releasing or settling any of its other counterclaims against the City, and the City is not waiving, releasing, or settling its defenses against such counterclaims, in the Litigation. TDX and the City shall promptly execute and file a joint motion ("Motion") for adoption of this Agreement by the Court in the Litigation as a final partial consent judgment ("Small Boat Harbor Final Partial Consent Judgment"). Entry of such Final Partial Consent Judgment by the Court in the Litigation is a condition to the Closing.

        11.    Closing. This Agreement shall be placed in escrow for closing ("Closing") with Pacific Northwest Title of Alaska, Inc. ("Escrow Agent"). A copy of this Agreement, the original instruments for the conveyances required by Section 2, and a certified copy of the Small Boat Harbor Final Partial Consent Judgment entered by the Court in the Litigation shall be delivered to and deposited with the Escrow Agent by the parties. This Agreement shall serve as the escrow instructions. The Escrow Agent may attach its standard conditions of acceptance thereto; provided, however, that in the event said standard conditions are inconsistent with any term of this Agreement, then this Agreement shall be controlling. All costs of Escrow Agent and Closing shall be borne by the City. The Closing shall be scheduled by the parties as soon as all of the conditions to the Closing specified in this Agreement shall have occurred. In no event shall the Closing occur later than October 31, 2007. At the Closing, TDX and the City shall execute the conveyancing instruments described in Section 2, and such instruments shall be immediately recorded in the Aleutian Islands Recording District by the Escrow Agent. In the event that the Closing does not timely occur, the Escrow Agent shall return all escrowed documents and instruments to the party which deposited them if TDX, the Tribe and the City jointly instruct it to do so in writing. Otherwise the Escrow Agent shall hold such documents and instruments until ordered otherwise by the Court in the Litigation or interplead such documents with the Court. All costs associated with the recordation of the conveyancing instruments shall be borne by the City. If the City or the Tribe desires to acquire any title insurance for any of the real property interests it is acquiring that are referred to in Section 2, it shall be required to obtain such insurance at its expense; and such acquisition shall

not be a condition to the Closing of this Agreement. All attorney's fees and legal costs incurred by the parties in negotiating, drafting, forming and Closing this Agreement shall be borne by the party who incurred them.

12. Title, Possession and Entry. The City and the Tribe shall have no right, title or interest (including no right of entry or possession) in, to or the real property interests to be conveyed to them pursuant to this Agreement until the Closing.

13. Authorization. Execution and delivery of this Agreement and the making and acceptance of the conveyances described herein has been authorized by

a. unanimous action by the Directors of TDX pursuant to AS10.06.475(b) in the form attached as Exhibit G;

b. action by a majority of the Tribal Council Members in the form attached as Exhibit H; and

c. ordinance of the City Council of the City adopted by a quorum of its Members at a duly called and held public meeting at which the public was given a thorough opportunity to give public testimony in the form attached hereto as Exhibit I.

14. City Representations, Warranties and Covenant. The City represents and warrants to, and covenants with, TDX and the Tribe that:

a. In negotiating, considering, and authorizing and taking the official action necessary for the City to enter into this Agreement, the City, the City Council, the City Planning and Zoning Commission, and the members of its Council and Planning and Zoning Commission have strictly complied with, and in Closing this Agreement will strictly comply with, all Federal, State and local open meetings laws, conflicts laws, and other Applicable Law necessary to make this Agreement valid and enforceable against the City by TDX and the Tribe in accordance with its terms.

b. This Agreement and the official actions required for the City to enter into it (i) are not procedurally or substantively uncon-scionable, (ii) were not procured under duress, coercion or undue influence on the part of TDX or the Tribe or any one for whom TDX or the Tribe is legally responsible, (iii) do not constitute a breach or violation of any public trust doctrine or policy applicable in any respect to the City, (iv) do not require the City Council or the City Planning and Zoning Commission to bind any future City Council or City Planning and Zoning Commission, (v) are neither void or voidable as a material breach or violation of the terms of any other agreements, covenants, understandings or commitments to which the City is a party, including, without limitation, any agreements, covenants, commitments or understandings with the Corps or any other branch, agency or instrumentality of the Federal Government related to the Project or any CEIP or other loans to the

City , and (vi) are fair, reasonable and equitable in its application to the City.

c.    The City (i) is not aware, and should not be aware, of any legal or factual basis for setting aside this Agreement or the Small Boat Harbor Final Partial Consent Judgment after it is entered under FRCP 60(b) or any other Applicable Law for any reason whatsoever and (ii) hereby irrevocably and unconditionally waives all claims, rights and remedies it may have or acquire in the future based upon currently unknown occurrences which might constitute a factual, legal or equitable basis under FRCP 60(b) or any other Applicable Law to seek to rescind, terminate or be excused from any obligation under from this Agreement or such Small Boat Harbor Final Partial Consent Judgment.

d.    The Partial Final Judgment entered by the Court in the Litigation on September 11, 2002, which was affirmed by the Ninth Circuit Court of Appeals in its opinion issued September 25, 2003, entitled *City of Saint Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003), is in full force and effect with regard to the City's obligations under the 1988 Settlement Agreement, except to the extent modified or superceded by (i) this Agreement, (ii) the Small Boat Harbor Final Partial Consent Judgment, (iii) the Partial Final Judgment Adopting the Landfill Settlement and Property Transfer Agreement, (iv) the Partial Final Judgment Adopting the Health Center/Staff Quarters Settlement Agreement, and (v) the Partial Final Judgment with Respect to Property Rights.

e.    Approval by the State of Alaska, United States of America or any of their respective agencies, instrumentalities or representatives is not required for this Agreement to be valid and fully enforceable by TDX and the Tribe against the City in accordance with its terms; nor have any of them breached any fiduciary or other duty they may have to the City in giving any express, implied or tacit approval to or of this Agreement.

15.    <u>City Defense/Indemnity</u>. The City shall defend, indemnify and hold TDX, the Tribe and their respective shareholders, councils, members, directors, officers, agents, representatives and attorneys harmless from any and all claims and defenses that the City may now have or obtain in the future that this Agreement, the Small Boat Harbor Final Partial Consent Judgment or some provision in it or them is invalid or not fully enforceable by TDX and the Tribe against the City in accordance with its terms. This in an independent covenant that shall survive (a) the Closing or termination of this Agreement for any reason and/or (b) any such claim or defense of invalidity or unenforceability of this Agreement by the City.

16.    <u>Corps Positions</u>. The City shall not directly or indirectly through any person, urge, request or seek the Corps to change any of its positions stated in Exhibit A, except for changes shown on Exhibits B-1 through B-6, and agrees to abide by such positions.

17.    <u>General Provisions</u>.

17.1. <u>Entire Agreement</u>. This written Agreement is fully integrated, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all other prior and contemporaneous agreements, contracts, representations, promises, acknowledgments, warranties and covenants, oral or written, by and between the parties with respect to such subject matter which are not expressly included herein.

17.2. <u>Notices</u>. Each notice required under this Agreement or by Applicable Law shall: (a) be in writing; (b) contain a clear and concise statement setting forth the subject and substance thereof and the reasons therefore; and (c) be personally delivered, facsimile transmitted ("FAX"), or duly mailed by certified mail, return receipt requested, to each party to this Agreement at its following address or number or to such other address or number as that party may have most recently given notice of to all of the other parties:

TDX:

> Tanadgusix Corporation
> Attn: Chief Executive Officer
> 4300 B Street, Suite 402
> Anchorage, Alaska 99503
> Fax No. (907) 278-2316
> Tel. No. (907) 278-2312

City:

> City of Saint Paul, Alaska
> Attn: City Manager
> P.O. Box 901
> Saint Paul Island, Alaska 99660
> Fax No. (907) 546-3188
> Tel. No. (907) 546-3110

Tribe:

> The Aleut Community of Saint Paul Island
> Attn: President
> P.O. Box 86
> Saint Paul Island, Alaska 99660
> Fax No. (907) 546-3254
> Tel. No. (907) 546-3200

All such notices shall be effective (d) when actually received by the recipient or an authorized representative or agent of the recipient or (e) three (3) business days after they are mailed (not including the date of transmittal; not including mailed confirmations of received FAX notices), whichever occurs earlier. All FAX notices shall be sent by mail to the recipient within three (3) business days after the FAX notice is sent.

17.3. <u>Limited Waivers</u>. Any failure or delay by any party to object to a default or exercise any rights or remedies under this Agreement shall not constitute a waiver of the right to do so in the future, unless such failure is accompanied by an express written waiver by such party.

17.4.   Partial Invalidity. In the event that any term or condition of this Agreement is declared by a court of competent jurisdiction to be void or unenforceable, the remaining terms and conditions shall nevertheless be valid and enforceable; and such void or unenforceable term shall be modified to the minimum extent necessary to be valid and enforceable to the fullest extent permitted by Applicable Law and enforced as such.

17.5.   No Fiduciary Duty.

a.     The parties to this Agreement specifically intend that neither this Agreement nor any course of dealing between them shall create fiduciary obligations.

b.     Nothing contained in this Agreement, and no prior or future course of dealings between the parties, shall be construed as establishing a partnership, joint venture or agency between the parties.

c.     The respective rights, duties and obligations of the parties with respect to the subject matter of this Agreement shall be controlled exclusively by this Agreement. Any obligation or covenant of good faith and fair dealing between the parties implied in this Agreement, whether express, implied-in-fact or implied-in-law, is intended to be contractual only.

d.     This Agreement was negotiated at arms' length. There is no "special relationship" between the parties. No party is or has been influenced or dominated by the other.

e.     Each party places in the other the trust and confidence that reasonable strangers dealing at arms' length in business relationships would place in one another. Neither party reposes any special or extraordinary trust in the other.

f.     Each party represents that it is an independent, experienced and sophisticated business person. Each party independently conducts its own investigations and obtains its own information about business transactions. Each party relies wholly on its own counsel in making business decisions.

g.     The frequency, length or closeness of dealings between the parties, including any extended dealings over a lengthy period of time, have not created, and shall not create, any fiduciary obligations or relationships between them.

h.     Any advice given by one party to the other is offered unilaterally and accepted indifferently. Neither party undertakes to act for the benefit of the other, and neither accepts any trust unilaterally reposed by the other.

i.     Any disclosure obligations contained in, resulting from or arising out of this Agreement or the course of dealing between the parties are strictly contractual and do not create any fiduciary obligations.

j.      The parties intend that any disclosures of information, confidential or otherwise, during the course of business negotiations or dealings not be construed as creating additional disclosure obligations.

17.6.   Limited Third Party Beneficiaries. This Agreement is not intended to benefit, burden or be enforceable by any persons other than TDX, the City, the Tribe (but only to the extent it affects the Tribe's property rights and interests in the area shown on the Map), and their respective delegees, assigns, successors, successors in interest, and other persons generally or specifically referred to herein.

17.7.   Applicable Law.   This Agreement and the respective rights, remedies, liabilities and obligations of the parties hereunder shall be construed and interpreted as a contract and litigation settlement agreement under the laws, statutes, rules and regulations of the State of Alaska and the United States, without regard to their respective conflicts of law principles, (together "Applicable Law").

17.8.   Default.

17.8.1. Notice/Cure of Default. In the event that any party to this Agreement ("Defaulting Party") should default on the performance of any of its obligations or in the satisfaction of any of its liabilities under or with respect to this Agreement (including failing to cause a condition to the Closing to occur that was within its right, power and authority to cause to occur) or the Small Boat Harbor Final Partial Consent Judgment, any of the other parties (each a "Non-Defaulting Party") may give the Defaulting Party and all of the other parties notice of the particulars of such default and a demand that the Defaulting Party cure such default ("Notice of Default"). If the Defaulting Party (a) within thirty (30) days after the giving of any such Notice of Default, has not completely cured all defaults in monetary obligations and (b) within ninety (90) days after the giving of such Notice of Default, completely cured, or, in the case of defaults that cannot with reasonable efforts be completely cured within ninety (90) days, has not commenced to cure and be diligently proceeding toward a complete cure, of all of its other defaults, then the Non-Defaulting Party shall have all of the rights and remedies for such default that are available to it under Applicable Law and/or this Agreement.

17.8.2. Uncured Default Remedies. In the event that any party materially defaults under this Agreement and does not timely cure such material default after the Non-Defaulting Party has complied with the requirements of Section 17.8.1, then, along with its consistent rights and remedies under Applicable Law, the Non-Defaulting Party (a) may (i) terminate this Agreement, (ii) be excused from performing its remaining obligations under this Agreement and (iii) notwithstanding such termination, recover foreseeably caused damages from the Defaulting Party for such default or (b) may (i) obtain specific performance of the Defaulting Party's obligations under this Agreement without having to prove immediate, irreparable or substantial harm or the lack of an adequate remedy at law, (ii) suspend its own performance until the Defaulting Party fully performs all of its remaining obligations, and (iii) recover foreseeably caused damages from the Defaulting Party for such default, if any, in which case this Agreement shall continue in full force and effect and the Non-Defaulting Party shall tender performance to the Defaulting Party when due under this Agreement; provided, however, that the remedies referred to in Section 17.8.2(a) shall apply only to pre-Closing uncured material defaults.

17.9. <u>Exclusive Jurisdiction and Venue</u>. In the event that a question, dispute or requirement for interpretation or construction (each a "Dispute") should arise with respect to this Agreement and/or the Small Boat Harbor Final Partial Consent Judgment or its subject matter, the jurisdiction and venue therefore shall lie exclusively with the Court in the Litigation if such Court retains continuing jurisdiction and, if it does not, the same Court if there is a basis for federal jurisdiction over such Dispute. In the event, and only in the event, that there is no basis for federal jurisdiction over such Dispute, then such exclusive jurisdiction and venue over such Dispute shall lie with the Alaska Superior Court for the Third Judicial District for the State of Alaska at Anchorage. The Tribe hereby submits itself to the jurisdiction and venue of such courts and waives all rights of sovereign immunity it may have to object to such jurisdiction and venue.

17.10. <u>Prevailing Party Entitled to Actual Cost and Actual Attorney Fees</u>. The prevailing party in any action for enforcement of this Agreement or the Small Boat Harbor Final Partial Consent Judgment shall be entitled to recover its reasonable actual attorney fees and costs from the non-prevailing party.

17.11. <u>Non-Merger</u>. This Agreement and the Final Partial Consent Judgment shall not merge into any leases, subleases, deeds or other instruments and shall survive the Closing.

17.12. <u>Real Property Estates</u>. Each time the term "real property" or any synonym or derivative thereof is used in this Agreement, it refers to the: (a) surface estate when such term is used with reference to (i) uplands which TDX has received under ANCSA or (ii) tidelands the City or TDX has acquired or is leasing from the State; and (b) fee simple estate when such term is used with referenced to any other lands, including, without limitation, 1984 Transfer of Property Agreement ("TOPA") lands and other Federal surplus lands that may become available on Saint Paul Island.

17.13. <u>No Platting Obligations of TDX</u>. Unless expressly required of TDX in this Agreement, TDX shall not be obligated to (a) dedicate or donate any real property interest to the public, grant any temporary or permanent easements or rights-of-way, agree to any qualifications, restrictions on or covenants burdening any of its retained real property interests, or (b) plat or subdivide any of the real property interests TDX is required to convey to the City under this Agreement.

17.14. <u>Assignment and Delegation</u>. The parties to this Agreement shall have no right, power or authority to assign any of their respective rights or delegate any of their respective duties under this Agreement.

17.15. <u>Time</u>. Time is of the essence of this Agreement. The term of this Agreement may be extended by the parties, but only in a written document executed and delivered by all of the parties.

## Formation

In witness whereof, TDX, the Tribe and City have executed, delivered and formed this Agreement, effective the 31st day of October, 2007 ("Effective Date"),

TDX:

TANADGUSIX CORPORATION, an Alaska Native Village corporation

Dated: ~~November~~ 18 December 5, 2007

By _Ron P. Phlmn_

Ron P. Philemonoff,
Chief Executive Officer

TRIBE:

THE ALEUT COMMUNITY OF SAINT PAUL ISLAND, a Tribe organized under the Indian Reorganization Act

Dated: November ___, 2007

By_____

Robert Melovidov,
President

## Formation

In witness whereof, TDX, the Tribe and City have executed, delivered and formed this Agreement, effective the 31st day of October, 2007 ("Effective Date").

TDX:

TANADGUSIX CORPORATION, an
Alaska Native Village corporation

Dated: November ___, 2007

By_____
Ron P. Philemonoff,
Chief Executive Officer

TRIBE:

THE ALEUT COMMUNITY OF SAINT
PAUL ISLAND, a Tribe organized under
the Indian Reorganization Act

Dated: November _14_, 2007

By_____
Robert Melovidov,
President

CITY:

CITY OF SAINT PAUL, an Alaska
municipal corporation

Dated: October 31, 2007

By _____
        Linda Snow,
        City Manager

**Exhibit A**

**Corps' August 11, 2006 letter to TDX' Legal Counsel**



**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 898
ANCHORAGE, ALASKA 99506-0898

REPLY TO
ATTENTION OF:

Project Management Civil Works Branch

August 11, 2006

Terrance A. Turner
Turner & Meade, P.C.
Attorneys at Law
1500 West 33rd Avenue, Suite 200
Anchorage, Alaska 99503-3502

Dear Mr. Turner:

This letter is a response to your letter dated July 28, 2006 regarding the Saint Paul small boat harbor. TDX has always been an active supporter of the Corps' Saint Paul Harbor project, and has provided resources for the project numerous times in the past. Thank you for expressing TDX's concerns regarding the proposed small boat harbor. It is my desire to satisfy TDX's requests so that we may proceed to construction of the small boat harbor. The requests are repeated below and annotated with my responses:

**TDX Requests**

1. TDX requests the Corps to reconfigure and relocate the Tidal Pool substantially as shown in Map 6A attached as Exhibit E.

*It appears that a relocated tidal pool would serve its function as well as the tidal pool in the original location. We will coordinate the relocation request with the resource agencies. If the relocation is found to be acceptable we will change the small boat harbor design to reflect the new configuration and location of the tidal pool.*

2. TDX requests the Corps to confirm that it will not require any LSF to be constructed by the City or others that are inconsistent with or alter the Small Boat Harbor configuration and/or location shown in Exhibit E.

*The sponsor is required to construct the local service facilities as generally described in the Saint Paul Small Boat Harbor General Reevaluation Report (GRR), dated February 2006, Figure 4. Exhibit E is essentially the same as Figure 4. The Corps will not require any local service facilities to be constructed that are inconsistent with Exhibit E. Please note that the access routes to the small boat harbor are still being negotiated, and may change in accordance with an agreement between the City and TDX.*

3. TDX requests the Corps to resolve all of the concerns of the Tribe specified in Exhibit D to the satisfaction of the Tribe.

*See responses to Tribe concerns below.*

4. TDX requests the Corps to confirm that it will allow TDX unrestricted access to utilize the new breakwater portion of the GNI to develop and operate its ATS 1472 Tidelands adjacent to such new breakwater.

*The Corps will not restrict access to the breakwater. We request that piles not be driven through the breakwater. In addition, we would like to discuss with TDX any plans that involve construction of structures on or above the breakwater to insure that they will not hamper the Corps' maintenance activities.*

**TRIBE CONCERNS**
(a)     That the floating dock to be constructed by the City as part of the LSF along the southerly 250 feet of the westerly breakwater be available for use by the Tribe on a non-exclusive shared basis with the public.

*The floating dock is required to be a public dock. It will be available for use by the Tribe on a non-exclusive shared basis with the public.*

(b)     That the Tribe has the exclusive right to use the permanent Tribe Dock to be constructed by the Tribe adjacent to such floating dock as shown in Exhibit E.

*Because the Tribe Dock is an incidental feature to the overall small boat harbor project, and because the public will still have access to the harbor, the Corps has no objection to the Tribe retaining exclusive use of its dock adjacent to the floating public dock.*

(c)     That no spill response facilities or vehicle turn-around be required on the Tribe's Small Boat Harbor property shown in Exhibit E.

*The spill response facilities and vehicle turn-around are incidental to the overall design of the harbor. They may be moved.*

(d)     That the City and the Tribe may agree on the location and width of the public access to the westerly breakwater and floating dock across the Tribe's Small Boat Harbor property.

*The Corps will not proceed with construction of the small boat harbor until the City, Tribe and TDX reach an agreement on the public access routes to the harbor.*

(e)     Project maps prepared by Oliver and Associates on January 30, 2001 (found in General Reevaluation Report Appendix 2 of the EA and in Appendix A -Hydraulic Design), are incorrectly labeled as the "TDX/IRA Suggested Layout #1." While this appears to be the Corps' preferred alternative, the Tribe did not propose, or approve of, the layout depicted in those project maps. Formal government-to-government consultation is necessary prior to any departure from Exhibit E to this letter.

*I do not envision a change to the approved small boat harbor plan as depicted in Figure 4 of the GRR and in Exhibit E. If there is a departure in the future, the Corps will initiate government-to-government consultation with the Tribe.*

(f)     The March 22, 2003 letter from the City of St. Paul to Colonel Steven Perrenot, found at Appendix E - Sponsor Letter of Intent, needs clarification. The letter references a lease between the Tribe and the City of St. Paul for the "remaining non-navigation area of the Small Boat Harbor." However, to our knowledge, no such lease has been entered into between the City and the Tribe. While the IRA is

receptive to negotiating a lease with the City, if necessary, the Tribe wants the record to be clear that there is no executed lease in existence at this time.

*The clarification to the City's letter of intent is noted. I understand that a lease does not exist at this time, but that the tribe is receptive to negotiating such a lease in the future.*

I hope my responses satisfy the TDX requests and Tribe concerns regarding the small boat harbor project and their rights and interests. Please call me at 907-753-5680 if you would like to discuss these issues further.

Most Sincerely,

Andrea Elconin
Project Manager

cc:     Linda L. Snow, City Manager
        City of Saint Paul

        Ron P. Philemonoff, Chairman
        Tanadgusix Corporation

        Robert Melovidov, President
        Aleut Community of St. Paul Island Tribal Government

**Exhibit A**
Page __3__ of __3__

CONSENT JUDGMENT
EXHIBIT A     Page 22

**Exhibit B-1 through B-6**

**Maps of Village Cove Harbor**



DHI CONSULTING ENGINEERS
CIVIL · SURVEYING · PLANNING

SMALL BOAT HARBOR
AGREEMENT — ST. PAUL

EXHIBIT B-1





DHI CONSULTING ENGINEERS
CIVIL • SURVEYING • PLANNING
Telephone: (907)561-1586     Fax: (907)561-1563
500 E. Second Fuller S-550     Anchorage, AK 99515

SMALL BOAT HARBOR
AGREEMENT — ST. PAUL

EXHIBIT B-3





EXHIBIT B-5

SMALL BOAT HARBOR
AGREEMENT — ST. PAUL

DHI CONSULTING ENGINEERS
CIVIL • SURVEYING • PLANNING



**Exhibit C**

**Corps' February 6, 2007 letter to Linda Snow**



**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 6898
ELMENDORF AFB, ALASKA 99506-0898

February 6, 2007

REPLY TO
ATTENTION OF:

Real Estate Division

Ms. Linda L. Snow
City Manager
City of Saint Paul
Post Office Box 901
Saint Paul Island, Alaska  99660-9999

Dear Ms. Snow:

This concerns the real estate requirements for construction of the Saint Paul Small Boat Harbor (Phase III).  Since issuing our directive to the City on October 11, 2006, to acquire project lands, there has been significant discussion about the upland boundary and our limits of navigation servitude among the affected landowners, in particular Tanadgusix Corporation ("TDX"), the primary uplands owner in the vicinity of the project.

While originally we based our boundary for defining the mean high water (MHW) and limits of navigation servitude on the 1983 BLM Meander Line, further information has revealed this may not be the record MHW line which determines uplands from tidelands.  At the present time, the City has obtained State approval for conveyance of the majority of tidelands in the project area; however, the survey has not yet been completed which would establish the State approved record MHW line.  Therefore, without an approved survey, we have decided to limit our navigation servitude to the existing MHW line, which is currently at elevation +3.0 MLLW.  While we have limited our navigation servitude to the +3.0 MLLW line at this time, please note that by taking this position, the Federal Government does not waive its right to assert the navigation servitude to the record MHW line as may be determined by the State of Alaska based upon an acceptable tidelands survey, to the extent that it varies from the existing MHW line, nor does this otherwise affect any assertion or position that we may take regarding the limit of the navigation servitude should another location based on additional facts unfold in the future.  Additionally, the assertion of our navigation servitude rights to the elevation +3.0 MLLW level is intended solely for this purpose for this project, and is not intended to affect the rights of any other parties to establish a tideland or other boundary establishing or limiting property rights or interests.

As a result of our revising the limits for our servitude, it will be necessary for the City to acquire additional real estate interests for project construction.  Enclosed please find the revised right-of-way drawing and estates defining the lands and minimum interests required for construction, operation, and maintenance of the project.  In our meeting on January 29th, Ron Philemonoff, Chairman and Chief Executive Officer of TDX, indicated the Corporation was willing to donate the lands needed for the project to the City at no cost.

**Exhibit C**
Page ___/___ of ___5___

CONSENT JUDGMENT
EXHIBIT A    Page 31

-2-

You are reminded that acquisition of project lands must comply with the appraisal, negotiation and relocation requirements of Public Law 91-646, as amended. Again, please be aware that minor adjustments may be required in the future that could necessitate acquisition of additional lands.

As your acquisition activities progress, please provide documentation to this office of the interests being acquired or evidence of interest for lands already owned. We will review the material and notify you if there are any problems. Please be sure to maintain detailed records of your costs directly related to the acquisition of project lands. An accurate and detailed accounting is important when submitting your claims for credit of lands and associated expenses.

Once your land acquisition activities are completed, you can then furnish the certification document assuring the Government the right to enter upon the property for project construction. This must be provided before we can advertise the construction contract. Your prompt attention to completing the land acquisition process is requested in order to maintain project schedules.

A copy of this letter is being furnished to Mr. Ron Philemonoff for his information and reference.

Should you have any questions regarding the real estate requirements or the acquisition process, please contact myself at (907) 753-2849 or Ms. Melanie Harrop at (907) 753-5694; FAX (907) 753-1836.

Sincerely,

Linda S. Arrington
Team Leader, Acquisition Section
Real Estate Division

Enclosures

**Exhibit C**
Page _2_ of _5_

CONSENT JUDGMENT
EXHIBIT A     Page 32

# UPDATED

## SAINT PAUL SMALL BOAT HARBOR PROJECT (Phase III)

**ESTATES:** The minimum interests in real estate required to support construction, operation, and maintenance of the project are as follows:

## GENERAL NAVIGATION FEATURES

1. Berm, circulation -- Interest: Perpetual Easement

A perpetual and assignable right and easement in the land described in Exhibit A to construct, maintain, repair, operate, patrol and replace an armored berm, including all appurtenances thereto; reserving, however, to the owners, their heirs and assigns, all such rights and privileges in the land as may be used without interfering with or abridging the rights and easement hereby acquired; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

2. Upland Dredged Material Disposal Area -- Interest: Temporary Easement, (estimate 2 years)

A temporary easement and right-of-way in, on, over and across the land described in Exhibit __, for a period not to exceed _2 years_ beginning with the date possession of the land is granted to the City of Saint Paul, for use by the City of Saint Paul and the United States, its representatives, agents, and contractors as a work area, including the right to deposit fill, spoil and waste material thereon; move, store and remove equipment and supplies and erect and remove temporary structures on the land; and to perform any other work necessary and incident to the construction of the Saint Paul Small Boat Harbor Project, together with the right to trim, cut, fell and remove therefrom all trees, underbrush, obstructions, and any other vegetation, structures, or obstacles within the limits of the right-of-way; reserving, however, to the landowners, their heirs and assigns, all such rights and privileges as may be used without interfering with or abridging the rights and easement hereby acquired; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

3. Access Road -- Interest: Perpetual Road Easement

A perpetual and assignable easement and right-of-way in, on, over and across the land described in Exhibit __ for the location, construction, operation, maintenance, alteration and replacement of a road and appurtenances thereto; together with the right to trim, cut, fell and remove therefrom all trees, underbrush, obstructions and other vegetation, structures, or obstacles within the limits of the right-of-way; reserving, however, to the owners, their heirs and assigns, the right to cross over or under the right-of-way as access to their adjoining land; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

4. Channel, Breakwater, and Dredged Material Disposal Area (Intertidal area)

These lands are below the line of mean high water and are subject to the Federal Government's right of navigation servitude. The Government has the right to use these lands within the servitude and no additional interest is required by the City of Saint Paul.

(Revised 2/06/07)

**Exhibit C**
Page __3__ of __5__
CONSENT JUDGMENT
EXHIBIT A     Page 33

SAINT PAUL SMALL BOAT HARBOR PROJECT (Phase III)
Continued

5.  Tidal Pool Construction -- Interest:  Fee

The fee simple title to the land described in Exhibit __ subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

## LOCAL SERVICE FEATURES

FOR CORPS CONSTRUCTION ONLY, sufficient interests are needed as follows:

Inner Harbor Dredging

Temporary right not to exceed _2 years_ beginning with the date possession is granted for use by the City of Saint Paul and the United States, its representatives, agents, and contractors to excavate, dredge, and remove any or all of said land, and for such other purposes as may be required in connection with construction of the inner harbor basin

Upland Dredged Material Disposal Area

A temporary easement and right-of-way in, on, over and across the land for a period not to exceed _2 years_ beginning with the date possession of the land is granted to the City of Saint Paul, for use by the City of Saint Paul and the United States, its representatives, agents, and contractors as a work area, including the right to deposit fill, spoil and waste material thereon; move, store and remove equipment and supplies and erect and remove temporary structures on the land; and to perform any other work necessary and incident to the construction of the Saint Paul Small Boat Harbor Project, together with the right to trim, cut, fell and remove therefrom all trees, underbrush, obstructions, and any other vegetation, structures, or obstacles within the limits of the right-of-way; reserving, however, to the landowners, their heirs and assigns, all such rights and privileges as may be used without interfering with or abridging the rights and easement hereby acquired; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.

## UPDATED



St. Paul, Alaska
St. Paul
Small Boat Harbor
Phase III

U.S. ARMY ENGINEER DISTRICT
CORPS OF ENGINEERS
REAL ESTATE
ANCHORAGE, ALASKA

# Exhibit D

## Tidelands Lease from City to Tribe

# TIDELANDS LEASE

## BETWEEN

## CITY OF SAINT PAUL

## AND

## ALEUT COMMUNITY OF SAINT PAUL ISLAND

# TABLE OF CONTENTS

PARTIES

RECITALS

ARTICLE 1      LEASED PREMISES, TERM AND CONDITIONS PRECEDENT
    1.01    Leased Premises
    1.02    Lessor's Improvements
    1.03    Lease Term
    1.04    Physical Condition and Suitability of the Leased Premises
    1.05    Title to Leased Premises
    1.06    Conditions Precedent

ARTICLE 2      RENTS
    2.01    Rents

ARTICLE 3      QUIET ENJOYMENT
    3.01    Basic Covenant
    3.02    Exceptions

ARTICLE 4      TENANT'S COVENANTS
    4.01    Permitted Use
    4.02    Construction or Removal of Improvements, Additions and Alterations
    4.03    Required Permits
    4.04    Repair and Maintenance
    4.05    Observance of Laws and Regulations
        A.    General Compliance
        B.    Environmental Laws
        C.    Hazardous Materials on Premises
        D.    Environmental Indemnity
        E.    "Hazardous Material"
    4.06    Waste and Nuisance
    4.07    Taxes, Assessments and Charges
    4.08    Liens
    4.09    Indemnification
    4.10    Costs and Expenses of Lessor
    4.11    Holdover
    4.12    Responsibility Upon Damage to or Destruction of Property

ARTICLE 5      INSURANCE
    5.01    Liability Insurance
    5.02    Property Insurance

| | | |
|---|---|---|
| 5.03 | Policy Provisions | |
| 5.04 | Proof of Insurance | |
| | | |
| ARTICLE 6 | EMINENT DOMAIN | |
| 6.01 | Effect of Eminent Domain on Lease | |
| 6.02 | Disposition of Proceeds | |
| | A. | Total Taking |
| | B. | Partial Taking |
| | | |
| ARTICLE 7 | ASSIGNMENTS, MORTGAGES, SUBLEASES AND SUBDIVISION | |
| 7.01 | No Right to Assign | |
| 7.02 | Mortgage of Leasehold Interest | |
| | A. | Subordinate to Lease |
| | B. | Notice to Lessor |
| | C. | Notice of Default and Opportunity to Cure |
| | D. | Possession by Mortgagee |
| | E. | No Liability of Mortgagee Without Assumption |
| | F. | Subsequent Assignee |
| 7.03 | Right to Sublet | |
| 7.04 | Subdivision of Leased Premises | |
| | | |
| ARTICLE 8 | DEFAULT AND DEFEASANCE | |
| 8.01 | Default by the Tribe | |
| 8.02 | Default by Lessor | |
| | | |
| ARTICLE 9 | GENERAL PROVISIONS | |
| 9.01 | Lessor's Right to Entry, Inspection and Repair | |
| 9.02 | Notices | |
| 9.03 | Integration and Amendments | |
| 9.04 | Survival and Severability | |
| 9.05 | Powers of Lessor as Municipal Corporation | |
| 9.06 | Authority to Contract | |
| 9.07 | Applicable Law; and Court Jurisdiction | |
| 9.08 | Captions | |
| 9.09 | Specific Terms | |
| | A. | Inclusion |
| | B. | Lessor's Approvals/Consents |
| | | |
| ARTICLE 10 | DUTIES UPON TERMINATION OR EXPIRATION | |
| 10.01 | Surrender of Leased Premises | |
| | | |
| ARTICLE 11 | EXECUTION AND MEMORANDUM OF LEASE | |
| 11.01 | Execution and Counterparts | |
| 11.02 | Recordation of Memorandum of Lease | |