Exhibit A -- Drawing of Leased Premises
Exhibit B -- Ordinance No. 07-07 of the City of Saint Paul
Exhibit C -- Resolution No. of the Aleut Community of Saint Paul Island

# TIDELANDS LEASE

## PARTIES

THIS LEASE ("Lease") is made effective on the day executed by the last signatory hereto, by and between the City of Saint Paul Island, Alaska, an Alaska municipal corporation ("Lessor"), whose mailing address is P.O. Box 901, Saint Paul Island, Alaska 99660, and the Aleut Community of Saint Paul Island, a federally recognized tribal entity organized under the Indian Reorganization Act, (herein "Tribe"), whose address is P.O. Box 86, Saint Paul Island, Alaska 99660.

## RECITALS

A.    Lessor has obtained approval from the Alaska Department of Natural Resources ("DNR") of its application for conveyance of the Tract B-3 tidelands ("Tract B-3 Tidelands") located within Village Cove Harbor, Saint Paul Island, Aleutian Islands Recording District, State of Alaska pursuant to AS 38.05.825 and expects to obtain such a conveyance by not later than December 31, 2008.

B.    Lessor entered into an agreement in 1988 ("Settlement Agreement") with Tanadgusix Corporation, the Alaska Native Village Corporation for Saint Paul Island ("TDX"), which resolved all uplands and tidelands claims on Saint Paul Island.

C.    Lessor and TDX are parties to litigation in the United States District Court for the District of Alaska at Anchorage, entitled *City of Saint Paul v. Donald Evans, et al.*, Case No. A97-0181 Civil, concerning the Settlement Agreement ("Litigation"), which involves the validity and enforceability of the Settlement Agreement, in general, and entitlement to the Tract B-Tidelands (among other issues) in particular.

D.    The Settlement Agreement has been (1) finally adjudicated in the Litigation to be valid and enforceable by TDX against the City in accordance with its terms and (2) has been preliminarily adjudicated to entitle TDX to lease the Tract B-3 Tidelands from Lessor if and when the City acquires them pursuant to AS 38.05.825.

E.    The Tribe has certain rights and interests in certain TDX uplands in the Village Cove Harbor Area, directly under the 1984 Transfer of Property Agreement ("TOPA") between TDX, the City, the Tribe and certain Federal agencies and instrumentalities, indirectly under the Settlement Agreement, and directly under an Agreement between the Tribe and TDX dated March 5, 1987, as amended ("1987 Agreement").

F.    Lessor is the local sponsor of a project ("Project") of the United States Army Corps of Engineers ("Corps") involving the construction of General Navigation Features ("GNF") and Local Service Facilities ("LSF") for a Small Boat Harbor on the Tract B-3 Tidelands, certain other tidelands leased by TDX from DNR and certain uplands owned by TDX,

as described in the Corps General Reevaluation Report, Saint Paul Small Boat Harbor dated February 2006 (herein "GRR").

G.    A partial settlement of the Litigation issues pertaining to entitlement to the Tract B-3 Tidelands has occurred between TDX and Lessor in a Small Boat Harbor Agreement ("SBH Agreement") between TDX, Lessor, and the Tribe, which has resulted in (1) Lessor acquiring the uplands from TDX that are required by the Corps for construction of the GNF, (2) Lessor being entitled to receive and retain the Tract B-3 Tidelands from DNR without further objection by TDX, (3) TDX being entitled to all of the Tract B-3 Tidelands uplands of the 1995 MHWL (+3.0') to settle a bona fide dispute between TDX and the City with respect thereto, and (4) the Tribe being entitled to lease from Lessor a certain portion of the remaining Tract B-3 Tidelands based upon such 1995 MHWL (+3.0').

H.    This Lease is the lease pursuant to which the Tribe leases from Lessor such portion of the remaining Tract B-3 Tidelands.

ARTICLE 1

LEASED PREMISES, TERM AND CONDITIONS PRECEDENT

1.01    Leased Premises. Lessor, for and in consideration of the rents, covenants and conditions hereinafter specified to be paid, performed and observed by the Tribe, and subject to the conditions precedent set forth in paragraph 1.05, below, hereby leases to the Tribe, and the Tribe hereby leases from Lessor, the portions of the Tract B-3 Tidelands defined by the 1995 MHWL (+3.0) that are shown and described as the Tribal Area and Tribe Dock in the map ("Map") attached as Exhibit A hereto, together with all rights, easements, and privileges appurtenant thereto or otherwise benefiting them (together "Leased Premises"). The Leased Premises shall within a reasonable time and at Lessor's expense, be either platted as a separate parcel within a subdivision or surveyed by metes and bounds. If platted, the Tribe shall execute the plat and the plat shall then control as to the boundaries of the Leased Premises. If surveyed, the parties shall execute an amendment to this Lease adopting said survey as the description of the Leased Premises. Neither the plat nor the survey, however, shall be a condition to the effectiveness of this lease.

1.02    Lessor's Improvements. Lessor shall have the right and duty to construct a permanent concrete retaining wall ("Retaining Wall") on the westerly side of the boat launch ramp ("Ramp") shown in the Map when the Ramp is subsequently constructed by Lessor or its delegee as part of the LSF. Such Retaining Wall shall be located along the entire westerly side of the Ramp, so that the Leased Premises can be filled up to an elevation of approximately plus 12. feet above mean low low water (+12 MLLW) along the westerly edge of the Ramp as shown on the Map.

1.03    Lease Term. This Lease shall be and continue in full force and effect for a term of 55 years (herein "Lease Term") commencing on the first day of the month immediately following the date the SBH Agreement Closes (as defined herein). The Tribe shall have the

option to extend the lease term for an additional 55 years, subject to all the provisions of this Lease, by giving written notice of the exercise of the option to Lessor at least 90 days prior to the expiration of the initial Lease Term. If the term of this Lease as so extended is claimed by a third party to be an unlawful sale, Lessor may tender defense of that claim to the Tribe who shall defend and hold the Lessor harmless from any liability or loss arising from such claim. If applicable law prevents Lessor from leasing the Leased Premises on the terms and conditions of this Lease for the Lease Term provided herein, upon a final adjudication of such limitation with respect to this Lease after resort to all available appeals, the Lease Term shall be reduced to the maximum allowable Lease Term that could have been legally agreed upon between the parties under such applicable law.

1.04    Physical Condition and Suitability of the Leased Premises. Lessor has made no representation, and hereby disclaims any warranty, concerning the physical condition of the Leased Premises or the suitability of them for any particular purpose. The Tribe accepts the Leased Premises in an "as is" physical condition.

1.05    Title to Leased Premises. Lessor represents and warrants to the Tribe that, if and when all of the conditions precedent to this Lease specified in paragraph 1.06 are satisfied, the Tribe will have good, marketable and unencumbered leasehold title to the surface estate of the Leased Premises subject only to the terms and conditions of this Lease and the general conditions, exceptions and restrictions of DNR's conveyance of them to Lessor.

1.06    Conditions Precedent. This Lease is subject to the following conditions precedent, which Lessor shall use its best efforts to cause to occur:

        A.    The Closing of the SBH Agreement.

        B.    The approval of a survey for, and the issuance of a conveyance of the Tract B-3 Tidelands by DNR to Lessor. It does not matter for purposes of this Lease whether Lessor receives a conveyance of the Tract B-3 Tidelands with an uplands/tidelands boundary defined by the 1984 Meander Line or any boundary other than the 1995 MHWL (+3.0'), because the Lessor has irrevocably agreed in the SBH Agreement: (1) to convey to TDX all portions of the Tract B-3 Tidelands that are upland of the 1995 MHWL (+3.0') to settle a bona fide boundary dispute between them; and (2) to lease to the Tribe the remaining portion of the Tract B-3 Tidelands based upon the 1995 MHWL (+3.0') that are necessary for the Tribe to obtain beneficial use and occupancy of the entire Tribal Area and Tribal Dock shown in the Map.

The Tribe may enter into possession of the Leased Premises prior to the occurrence of the conditions precedent but such entry will be at the Tribe's risk and without liability of the Lessor if the conditions precedent do not occur. The failure of any one of the events in paragraph 1.06.A or .B to occur within a reasonable time shall cause (i) this Lease to be thereupon automatically rescinded and (ii) Lessor to have irrevocably and unconditionally released and waived (with prejudice) all rights and interests it may then have or subsequently acquire in or to the Tract B-3 Tidelands, which waiver and release shall survive the rescission of this Lease.

## ARTICLE 2

## RENTS

2.01    Rents. the Tribe shall pay $100 per year to Lessor as rent.

## ARTICLE 3

## QUIET ENJOYMENT

3.01    Basic Covenant. Except as provided in paragraph 3.02, below, upon timely payment by the Tribe of all of such rents and other payments required to be paid by the Tribe under this Lease, and upon full and faithful observance and performance by the Tribe of all of its covenants contained in this Lease, and so long as such observance and performance continues: (a) the Tribe shall peaceably hold and enjoy the Leased Premises during the Lease Term without hindrance or interruption by Lessor or anyone lawfully claiming by, through or under Lessor; and (b) the City shall not directly or indirectly encourage the United States to assert that any part of the Leased Premises are burdened or restricted by the United States

3.02    Exceptions. The Tribe's quiet enjoyment may be disturbed by one or more of the following, none of which shall give rise to liability of Lessor to the Tribe:

   A.    Subject to Paragraph 3.01 above, the exercise by the United States of its rights under any navigational servitude to the extent it legally burdens the Leased Premises.

   B.    The exercise by the State of Alaska of any rights reserved in its conveyance to Lessor of the Leased Premises, including any right to extract minerals, oil, or gas from the Leased Premises.

   C.    The exercise by the public of any rights under the public trust doctrine to access the Leased Premises for navigation, commerce, fishing, and other purposes.

   D.    The exercise of any rights of entry reserved by the Lessor in this Lease.

## ARTICLE 4

## TENANT'S COVENANTS

4.01    Permitted Use. The Tribe shall use the Leased Premises for any lawful maritime related use purpose, including, without limitation, the construction, operation, support, maintenance, repair and replacement of docks, warehouse and processing facilities and vessel repair, service and mooring facilities.

4.02    Construction or Removal of Improvements, Additions and Alterations.

A.      "Significant Work," as used in this paragraph 4.02, means all work on the Leased Premises costing more than One Hundred Thousand Dollars ($100,000) (as reasonably adjusted by changes in the real value of the Dollar), which (1) involves the dredging, excavation, filling, grading or drainage of the Leased Premises, (2) involves the construction, demolition, or removal on or from the Leased Premises of any improvement, addition or alteration, or (3) if the fees or other charges therefore are not timely paid, will subject the Leased Premises or the interest of Lessor or the Tribe therein to any lien or other encumbrance.

B.      Except for those improvements indicated on the Map attached as Exhibit A, the Tribe shall not begin any Significant Work without first obtaining the prior written approval of Lessor with respect to such work and to the preliminary plans for such work, if any, and to the final plans and specifications for such work. This approval is in addition to and not in lieu of any approvals by Lessor which are required for such Significant Work in its local governmental capacity as regulator of land uses. The Tribe hereby acknowledges that has not authorized or required, and does not hereby authorize or require, the Tribe to improve the Leased Premises in any manner that permits Lessor's interest in and title to the Leased Premises to become subject to the liens of the Tribe's mechanics and materialmen.

C.      Except for improvements indicated on the Map, the Tribe shall not make any improvements to the Leased Premises, including placement or stabilization of fill or armor rock, which will reduce the depth or extent, or to unreasonably interfere with the operation, of the portion of the Small Boat Harbor Basin lying within the Leased Premises. However, the Tribe may construct and operate any mooring facility or dock on and over any portion of such Basin lying within the Leased Premises.

4.03    Required Permits. The Tribe shall obtain all necessary permits from the Corps and any other governmental entity with authority over the occupancy or construction of improvements on navigable waters, tidelands and/or wetlands, including permits of Lessor acting in its capacity as regulator of land uses if and to the extent Lessor has such local governmental authority over the Tribe with respect thereto.

4.04    Repair and Maintenance. The Tribe shall, at the Tribe's expense and without notice from Lessor at all times during the Lease Term, keep all improvements hereafter constructed on the Leased Premises in good order, condition, maintenance, operability, and repair.

4.05    Observance of Laws and Regulations.

A.      General Compliance. The Tribe, at all times during the Lease Term, at its own expense, and with due diligence, shall observe and comply with all applicable laws, ordinances, rules, and regulations, and administrative agency or court orders pertaining to the Leased Premises, or any improvements on or use of the Leased Premises which are now or hereafter in effect. Without limiting the foregoing, the Tribe shall comply with regulations enacted by Lessor in the exercise of police powers granted to municipal corporations by Alaska

statutes or by any other applicable law or regulation. Without limiting the foregoing, the Tribe shall comply with regulations enacted by the Lessor and enforced, through public safety officers, a harbormaster or otherwise, concerning the use of and vessel operations within the harbor of which the Leased Premises is a part.

B.    Environmental Laws. In furtherance and not in limitation of the paragraph 4.05.A, the Tribe shall, at its own expense, comply with all applicable laws, ordinances, regulations and administrative agency or court orders pertaining to the Leased Premises, or any improvement on or use of the Leased Premises which relate to health, safety, noise, environmental protection, waste disposal, hazardous or toxic materials, and water and air quality. In the event any discharge, leakage, spillage, emission or pollution of any type occurs upon or from the Leased Premises during the Lease Term or any holdover by the Tribe thereafter, which is caused by the Tribe or any representative, employee or invitee of the Tribe, the Tribe shall immediately notify Lessor and shall, at the Tribe's own expense, clean and restore the Leased Premises to a condition required by such laws, ordinances, regulations and administrative agency or court orders.

C.    Hazardous Materials on Premises. The Tribe shall not cause or permit any Hazardous Materials to be brought upon, kept or used in or about the Leased Premises by the Tribe, its agents, employees, contractors or invitees unless such Hazardous Material is used, kept and stored in a manner that complies with all applicable laws regulating such Hazardous Materials.

D.    Environmental Indemnity. The Tribe shall indemnify, hold harmless and defend Lessor against all liabilities, costs and fees (including any fines, penalties, diminution in value of the Leased Premises, assessment and clean-up costs, judgments, litigation costs and attorneys' fees) incurring by or levied against Lessor as a direct result of any discharge, leakage, spillage, emission or pollution on or discharge of Hazardous Material from the Leased Premises that occurs during the Lease Term; provided, however, that the Tribe shall not be required to defend, indemnify or hold harmless Lessor under this paragraph if and to the extent that any such discharge, leakage, spillage, emission or pollution is not caused by the Tribe or any representative, employee or invitee of the Tribe. Except as provided to the contrary in paragraph 8.02, the foregoing obligations shall survive the expiration or earlier termination of this Lease.

E.    "Hazardous Material". For purposes of this Lease, the term "Hazardous Material" means any hazardous or toxic substances, material or waste, including those substances, materials and wastes listed in the U.S. Department of Transportation Hazardous Materials Table (49 CFR § 172.101) or by the U.S. Environmental Protection Agency as hazardous materials and wastes that are or become regulated under any applicable local, state or federal law.

4.06    Waste and Nuisance. The Tribe shall not commit or suffer any waste of the Leased Premises or any public or private nuisance thereon.

4.07    Taxes, Assessments and Charges. The Tribe shall pay, not less than ten (10) days before they become delinquent, all real property taxes and assessments levied upon the Leased

Premises, any improvement thereon, or any use thereof during and for the Lease Term that are authorized by applicable law. Nothing contained in this Lease shall prevent the Tribe from contesting in good faith the validity or the amount of such real property taxes or assessments by appropriate proceedings.

4.08   Liens. The Tribe shall not commit or suffer any act or omission whereby the Leased Premises or the interest of Lessor or the Tribe therein at any time during the Lease Term may become subject to any attachment, execution, or other non-consensual lien or encumbrance, except a statutory lien for nondelinquent real property taxes or assessments. The Tribe shall defend, indemnify and hold Lessor harmless from and against all losses, costs, and fees, including reasonable attorneys' fees, paid or incurred by Lessor as a result of any such prohibited attachment, execution, or other non-consensual lien or encumbrance. The Tribe shall not incur any cost or expense with respect to the Leased Premises which, if not timely paid, may subject the Leased Premises or the interest of Lessor or the Tribe therein to any consensual lien or other encumbrance, without first complying with the requirements of paragraph 7 of this Lease.

4.09   Indemnification.

A.   The Tribe shall defend, indemnify and hold Lessor harmless from and against any and all claims arising from (1) the Tribe's use of the Leased Premises, the conduct of the Tribe's business on the Leased Premises, or any activity, work or things done, permitted by the Tribe on the Leased Premises; and (2) any negligence or other fault of the Tribe or any person for whom the Tribe is legally responsible in connection with the Leased Premises; provided, however, that no such obligations shall exist with respect to any use, activity, work or things done or permitted of or by the City, the United States or any other Person who/which is not an invitee of the Tribe on the Premises. The Tribe, upon notice from Lessor, shall defend any of the above-described claims at the Tribe's expense, but shall have the right to control such defense to the same extent that an insurer would have under similar circumstances. Anything in this paragraph 4.09 to the contrary notwithstanding the provisions of this paragraph 4.09.A shall not apply if and to the extent that such claims or liabilities are caused by the negligence or other fault of Lessor or any person for whom Lessor is legally responsible.

B.   The Tribe acknowledges that: (1) before entering this Lease, it has fully inspected or been provided with an opportunity to fully inspect the Leased Premises and to test or examine the physical condition of the Leased Premises; (2) on the basis of the foregoing inspection or opportunity to inspect, the Tribe is as knowledgeable about the physical condition of the Leased Premises as Lessor and (3) on that basis, the Tribe assumes all risks relating to the physical condition of the Leased Premises, including latent defects in them that may be unknown both to the Tribe and Lessor at the time this Lease is entered into.

4.10   Costs and Expenses of Lessor. The Tribe shall forthwith pay to Lessor all costs and expenses, including reasonable attorneys' fees, which are: (1) paid or incurred by Lessor, but are required to be paid by the Tribe under any provision of this Lease; or (2) paid or incurred by Lessor in rightfully enforcing any covenant of the Tribe contained in this Lease, protecting itself against or remedying any breach thereof, recovering possession of the Leased Premises or any part thereof, or collecting or causing to be paid any delinquent rents, real property taxes,

assessments or rates. The term "costs and expenses" as used in this Lease shall include but not be limited to all of Lessor's out-of-pocket expenditures attributable to the matter involved. Except as otherwise expressly provided herein, all costs and expenses of Lessor shall be payable by the Tribe to Lessor forthwith after mailing or personal delivery of statements therefor to the Tribe and shall bear interest from the date which is ten (10) days after the date of such mailing or personal delivery at the rate of ten and one-half percent (10 ½%) per annum. Such obligations and interest shall constitute additional rents. Anything in this paragraph 4.10 to the contrary notwithstanding, such "costs and expenses" shall not include any costs or expenses that are due to or caused, in whole or in part, by (1) breach of this Lease by Lessor; (2) any unreasonable acts or omissions by Lessor or any person for whom Lessor is legally responsible; or (3) any negligence or other fault on the part of Lessor or any person for whom Lessor is legally responsible.

    4.11   <u>Holdover.</u>   If the Tribe remains in possession of the Leased Premises after expiration of the Lease Term without the execution of a new lease or of an extension of this Lease, and in such a manner as to create a valid holdover tenancy, and if no notice of termination has been delivered by Lessor to the Tribe, the Tribe shall be deemed to occupy the Leased Premises only as a tenant at will from month-to-month, upon and subject to all of the provisions of this Lease which may be applicable to a month-to-month tenancy, including but not limited to, the provisions of paragraph 8.01 of this Lease. Rent during the any holdover over period shall be the fair market rent.

    4.12   <u>Responsibility Upon Damage to or Destruction of Property.</u>  In the event any building on the Leased Premises is destroyed or damaged by fire or other casualty, the Tribe shall comply in full with one of the following conditions within ninety (90) days of such destruction or damage or within such other reasonable time period as may be required to do so, whichever is longer:

        A.    The Tribe may repair, rebuild, or otherwise reinstate the damaged building in a good and substantial manner and in substantially the same form as it previously existed. In such event, the Lease shall continue in full force and effect without abatement of rental.

        B.    The Tribe may repair, rebuild or otherwise reinstate the damaged building in a manner and form substantially different from the previously existing improvement, so long as it complies with Paragraph 4.02 of this Lease. In such event, the Lease shall continue in full force and effect without abatement of rental.

        C.    The Tribe may remove the damaged building. In such event, the Lease shall continue in full force and effect without abatement of rental.

        D.    The Tribe may elect to terminate the Lease by performing each of the following:

            1.    giving written notice to Lessor of its intention to terminate, and

            2.    removing the damaged building.

## ARTICLE 5

## INSURANCE

5.01    Liability Insurance.    During the entire Lease Term, and during any holdover thereafter, whether or not authorized by Lessor, the Tribe shall keep in full force and effect a policy or policies of general commercial liability insurance, provide(s) coverage for wrongful death, bodily injury, and property damage with respect to the Leased Premises and the businesses operated by the Tribe thereon, with limits of not less than ONE MILLION DOLLARS ($1,000,000.00) per occurrence and in the aggregate. Such minimum coverage shall be adjusted every five (5) years of the Lease Term based upon percentage increases in the Consumer Price Index for all Items for the Anchorage Area over the immediate past five (5) year period; provided, however, that no such limit shall in any way limit the Tribe's liability or be construed as a representation of sufficiency to fully protect the Tribe or Lessor. The policy or policies purchased pursuant to this paragraph shall name the Tribe as the insured and Lessor as an additional insured, with respect to the Leased Premises and the businesses operated by the Tribe on the Leased Premises.

5.02    Policy Provisions.    Each policy of comprehensive general liability described in paragraph 5.01 of this Lease shall:

A.    For such liability insurance, provide that the liability of the insurer thereunder shall not be affected by, and that the insurer shall not claim, any right of setoff, counterclaim, apportionment, proration, or contribution by reason of any other insurance obtained by or for Lessor, the Tribe, or any person claiming by, through, or under any of them;

B.    Provide that such policy requires thirty (30) days notice to Lessor of any proposed cancellation, expiration, or change in material terms thereof and that such policy may not be cancelled, whether or not requested by the Tribe, unless the insurer first gives not less than thirty (30) days prior written notice thereof to Lessor; and

5.03    Proof of Insurance.    The Tribe shall deliver to Lessor certificates of insurance on or after the occurrence of the conditions precedent of this Lease or at such other date as agreed to in writing by Lessor and annually thereafter upon renewal of the insurance.

## ARTICLE 6

## EMINENT DOMAIN

6.01    Effect of Eminent Domain on Lease.    The terms "taking" and "to take" (in any of its forms) as used in this paragraph exclusively refer to any competent governmental authority's acquisition by statutory power of eminent domain of all or any part of the Leased Premises or an interest therein, at any time during the Lease Term. In the event of a taking of all or materially

all of the Leased Premises, this Lease shall terminate on the earlier of vesting of title in, or the taking of possession by, the condemner. If less than materially all of the Leased Premises are taken, this Lease shall continue in effect except as to the portion so taken or condemned, but the rent to be paid by the Tribe shall thereafter be reduced by the same ratio as the value of the portion of the Leased Premises so taken bears to the value of the Leased Premises before taking.

6.02    Disposition of Proceeds.

A.    Total Taking. In the event of a total taking, the rights of Lessor and the Tribe to share in the net proceeds of any and all awards and damages based thereon shall be in the following order of priority:

1.    To Lessor, a sum equal to the fair market value of its reversionary interest in the Leased Premises.

2.    To the Tribe, a sum equal to (a) the fair market value of its leasehold interest in the Leased Premises and (b) its relocation expenses.

Interest on such damages and awards shall be allocated between the parties in proportion to their respective shares of the total award provided above. If the value of such respective interests of Lessor and the Tribe have been separately determined in a condemnation proceeding in which they have both participated, the values so determined shall be conclusive upon Lessor and the Tribe.

B.    Partial Taking. In the event of a partial taking, the net proceeds of the award shall be divided between Lessor and the Tribe on the same basis as in paragraph 6.02(A).

## ARTICLE 7

## ASSIGNMENTS, MORTGAGES, SUBLEASES AND SUBDIVISION

7.01    No Right to Assign. The Tribe shall not absolutely assign or otherwise absolutely transfer the Tribe's interest in this Lease without the consent of the Lessor.

7.02    Mortgage of Leasehold Interest. The Tribe shall have the right at any time, and from time to time, to assign this Lease, including the Tribe's leasehold estate and all its Improvements situated on the Leased Premises, in one or more mortgages, deeds of trust,. security agreements or other encumbrances as security for any loan or other obligation of the Tribe (each of which instruments is herein called a "Leasehold Mortgage"), subject to the following limitations.

A.    Subordinate to Lease. Each Leasehold Mortgage and all rights acquired under it shall be subject to subordinate to each and all covenants, conditions, and restrictions stated in this Lease, and to all rights and interests of Lessor, except as otherwise provided in this Lease.

B.    Notice to Lessor.  The Tribe shall give Lessor notice of any leasehold mortgage, and shall accompany the notice with a true copy of the note and the mortgage, deed of trust or other security instruments within 30 days of the execution of such instruments.

C.    Notice of Default and Opportunity to Cure.  Upon any default on any of the terms of the Lease by the Tribe, Lessor, in addition to notifying the Tribe, shall also notify the mortgagee, beneficiary and secured party under each Leasehold Mortgage (each a "Mortgagee") of such default.  Upon receipt of a written notice of default, each such Mortgagee shall have the same length of time as the Tribe to cure the default.

D.    Possession by Mortgagee.  A Mortgagee may take possession of the Leased Premises and vest in the interest of the Tribe in the Lease upon the performance of the following conditions:

1.    The payment to Lessor of any and all sums due to Lessor under the Lease, including accrued unpaid rent.

2.    The sending of a written notice to Lessor and the Tribe of Mortgagee's intent to take possession of the Leased Premises.

3.    The timely curing of all of the Tribe's defaults.

E.    No Liability of Mortgagee Without Possession.  A Mortgagee shall have no liability or obligation under this Lease unless and until it sends to Lessor the written notice that it has assumed the Tribe's obligations and liabilities under the Lease.  Nothing in this Lease nor in the taking of possession of the Leased Premises and assumption of the Lease by a Mortgagee or a subsequent assignee shall relieve the Tribe of any duty or liability to Lessor under the Lease.

F.    Subsequent Assignee.  In the event the Mortgagee forecloses the Leasehold Mortgage, unless the Mortgagee assumes this Lease, any subsequent assignee or transferee of this Lease and the leasehold estate must be approved by Lessor.

7.03    Right to Sublet.    The Tribe shall have the right during the Lease Term to sublet all or any part or parts of the Leasehold Premises and/or any improvements thereon and to assign, encumber, extend, or renew any sublease, provided the following provisions are complied with:

A.    Each sublease shall contain a provision requiring the subtenant to attorn to Lessor if (1) the Tribe defaults under this Lease, (2) this Lease is terminated as a result of the Tribe's default, (3) Lessor elects to assume the Sublease as a direct lease between Lessor and the subtenant, and (4) Lessor so notifies the subtenant and instructs the subtenant to make subtenant's rental payments to Lessor.

B.    Prior to execution of each sublease, the Tribe shall notify Lessor of the name and mailing addresses of the proposed subtenant and provide Lessor with photocopies of the proposed sublease. The Tribe shall not execute any such sublease until it has received the written consent of Lessor; provided, however, that in the absence of Lessor's approval or disapproval of any proposed sublease within 30 days of receipt by Lessor of notification as required, no such consent shall be required. Promptly after execution, the Tribe shall provide Lessor with a photocopy of the executed sublease.

C.    The term of any single sublease, including any rights of renewal or extension, shall not exceed ten (10) years.

No sublease shall relieve the Tribe of any of its covenants or obligations under this Lease, and any provisions of a sublease purporting to do so shall be deemed a nullity as between Lessor and the Tribe notwithstanding Lessor's failure to object to the sublease.

7.04    Subdivision of Leased Premises.    The Tribe shall not subdivide the Leased Premises or any part thereof.

## ARTICLE 8

## DEFAULT AND DEFEASANCE

8.01    Default by the Tribe. In the event that the Tribe should materially default in the performance of any of its obligations or in the satisfaction of any of its liabilities under or with respect to this Lease or the Leased Premises, including the timely payment of Rent, Lessor shall give the Tribe notice of such default. Such notice of default shall specify the particulars of such default and the remedy demanded. If (a) within thirty (30) days after the giving of any such notice, the Tribe has not completely cured all defaults in the payment of Rent and (b) within sixty (60) days after the giving of such notice, completely cured, or commenced to cure and be diligently proceeding toward a complete cure of, all of its other defaults, Lessor may elect among the remedies available to it under applicable law, including the right to terminate this Lease and/or to recover all unpaid Rent and damages which it has foreseeably suffered and will suffer as result of such default. Lessor shall seek to mitigate such damages by seeking to relet the Premises to a new tenant during the remainder of the Lease Term on such terms and conditions as may be commercially reasonable under the circumstances. If Lessor is successful in reletting the Premises, all rental payments received by Lessor from the new tenant during the Lease Term shall be duly credited against the Rent and damages the Tribe then owes to Lessor. No surrender of this Lease and no waiver or release of any of Lessor's rights or remedies or of the Tribe's obligations under this Lease or termination of this Lease shall occur as a result of any act, error, omission or conduct, verbal or nonverbal, on the part of Lessor or its agents or representatives in the absence of an express notice from Lessor to the Tribe that Lessor has agreed to such surrender, waiver, release or termination.

8.02    Defaults by Lessor.    In the event that Lessor materially defaults in the performance of any of its obligations under this Lease, Lessor shall have thirty (30) days after

the Tribe notifies Lessor of such default to cure such default if such default. If such default cannot, with ordinary diligent and reasonable efforts, be cured within such thirty (30)-day period, Lessor shall have such additional time to cure such default as is reasonably required by Lessor under the circumstances, provided that Lessor timely commences such cure within such thirty (30)-day period and thereafter reasonably and diligently pursues such cure. Such notice of default shall specify the particulars of such default and the remedy demanded. If Lessor does not timely cure such default, the Tribe may elect among the remedies available to it under applicable law, including the right to terminate this Lease, and/or to recover all damages which it has foreseeably suffered and will suffer as a result of such default. Anything to the contrary in this Lease notwithstanding, any such termination for a default shall terminate all defense, indemnify and hold harmless obligations of the Tribe to Lessor under this Lease or with respect to the Leased Premises.

## ARTICLE 9

## GENERAL PROVISIONS

9.01    Lessor's Right to Entry, Inspection and Repair. Lessor may enter and inspect the Leased Premises at any time during regular business hours in the presence of the Tribe or its authorized representative, after giving twenty-four (24) hours' advance notice to the Tribe of such inspection. In the event of any emergency, Lessor may enter and inspect the Leased Premises on reasonable notice (including no notice to the Tribe if the circumstances warrant) and make such repairs or institute such measures, on the account and at the expense of the Tribe, as may be necessary to avert or terminate the emergency. An emergency is any action, event, or condition, either extant or imminent, that threatens significant damage to property or injury to persons on or near the Leased Premises, and includes but not limited to flood, fire, explosion, earthquake, uncontrolled or dangerous discharge or release of water or other fluids, unauthorized or illegal placement of hazardous or toxic materials on the Leased Premises, and shifting, settling or loss of earth or support on the Leased Premises.

9.02    Notices. All notices required by this Lease must be given in writing and mailed by certified mail, return receipt requested, and addressed to such party or its agent at its mailing address specified herein or at the last such address specified by such party in writing to the other, or delivered personally within the State of Alaska to such party or its agent. Except as otherwise expressly provided herein, such notice shall be conclusively deemed to have been given three (3) days after the date of such mailing or upon personal delivery.

9.03    Integration and Amendments. This Lease (including the Recitals) is a complete integration of every agreement, warranty and representation made by or on behalf of Lessor and/or the Tribe with respect to the Leased Premises, and, except for the implied-in-law covenant of good faith and fair dealing, no implied covenant or prior oral or written agreement shall be held to vary the provisions of this Lease, any law or custom to the contrary notwithstanding. No amendment or other modification of the provisions of this Lease shall be effective unless incorporated in a written instrument duly executed and acknowledged by Lessor and the Tribe.

9.04    Survival and Severability.  The rights and obligations of Lessor and the Tribe provided in paragraphs 4.05 and 4.10 through 4.12 of this Lease, except to the extent expressly varied or superseded by subsequent instrument executed by Lessor and the Tribe, shall survive the expiration or earlier termination of this Lease.  If any provision of this Lease is held to be void or otherwise unenforceable by any court or other tribunal of competent jurisdiction, this Lease, except for such provision so held to be void or otherwise unenforceable, shall remain in full force and effect.

9.05    Powers of Lessor as Municipal Corporation.  Nothing in this Lease restricts or limits the authority of Lessor in the exercise of police powers granted to municipal corporations by Alaska statutes or by any other applicable law or regulation; provided, however, that, if Lessor enacts, or enforces through public safety officers, a harbormaster or otherwise, any regulations, rules or ordinances concerning the use of the Small Boat Harbor of which the Leased Premises is a part which unreasonably impairs or interferes with the Tribe's rights or interests under this Lease, it shall constitute a material breach of this Lease by Lessor.

9.06    Authority to Contract.  Lessor has authority to enter into this lease pursuant to AS 29.35.010 and 38.05.825(c).  The City Council of Lessor has authorized the making of this Lease by the adoption of Ordinance No. 07-07, a copy of which is attached hereto as Exhibit B.  The Tribe has authority to enter into this lease pursuant to Article IV of the Constitution of the Tribe. The Tribe's governing body has authorized the making of this Lease by the adoption of a resolution, a copy of which is attached hereto as Exhibit C.

9.07    Jurisdiction, Venue and Applicable Law.

A.    Jurisdiction and Venue.  Suit for the interpretation or enforcement or both of this Lease shall be brought in the courts of the State of Alaska and the Tribe waives any immunity or bar from suit therein which it may have.  Venue shall be in Anchorage, Alaska.

B.    Applicable Law.  This Lease shall be governed by and construed in accordance with the law of the State of Alaska.  The Tribe waives any claim of sovereign immunity as to Alaska law affecting any remedy of either party in the event of default, termination or expiration.  The Tribe does not waive any claim of sovereign immunity as to other law of the State of Alaska.

9.08    Captions.  The captions of the articles and paragraphs hereof are for convenience only, are not an operative part hereof, and neither limit nor amplify in any way the provisions hereof.

9.09    Specific Terms.

A.    Inclusion.  "Including" (and derivatives thereof) means "including, without limitation" (and derivatives thereof).

B.    Lessor's Approvals/Consents.  Whenever Lessor's approval or consent is required to be obtained by the Tribe hereunder, Lessor shall neither unreasonably, nor

capriciously, nor arbitrarily withhold or delay such approval or consent, nor require as a condition thereof any additional payment or other consideration other than payment by the Tribe to Lessor of all reasonable costs and expenses paid or incurred by Lessor in connection with its review and processing of the matter for which such approval or consent is sought.

## ARTICLE 10

### DUTIES UPON TERMINATION OR EXPIRATION

10.01   Surrender of Leased Premises.   Upon expiration or early termination of this Lease, the Tribe shall surrender to Lessor the possession of the Leased Premises. The Tribe shall leave the surrendered Leased Premises and any improvements in a broom-clean condition, as noted in paragraph 10.02. If the Tribe fails to surrender the Leased Premises at expiration or termination, the Tribe shall defend and indemnify Lessor from all liability and expense resulting from the delay or failure to surrender, including but not limited to claims made by any succeeding tenant founded on or resulting from the Tribe's failure to surrender. In the event of failure or refusal of the Tribe to surrender possession of the Leased Premises, Lessor shall have the right to reenter the Leased Premises and remove therefrom the Tribe or any person, firm or corporation claiming by, through or under the Tribe and to obtain damages for trespass from the Tribe.

10.02   Removal of Improvements upon Termination.

A.   Upon the expiration or termination of this Lease or any extension thereof, including termination resulting from the Tribe's breach ("termination"), the Tribe shall leave the Leased Premises in a broom-clean and leasable condition, which shall include removal of all improvements (except those indicated on Exhibit A), buildings, foundations and footings to buildings, personal property, trash vehicles, and equipment, except as noted in subparagraphs 10.02.B, .C and .D below. Any excavation on the property, including excavation to remove the Tribe's Improvements shall be filled and compacted with material approved by Lessor.

B.   Lessor may, at its option, allow the Tribe to leave some or all of the Tribe's Improvements on the Leased Premises upon termination. If Lessor so elects, such improvements shall become the property of Lessor upon termination.

C.   Lessor may, at its option, require the Tribe to leave some or all of the Tribe's Improvements on the Leased Premises upon termination, with Lessor becoming the owner of such improvements when at the time of termination, the Tribe has failed to make all payments to Lessor required under this Lease.

D.   Any improvements owned by Lessor and identified in paragraph 1.02, or added to the Leased Premises by Lessor after execution of this Lease, shall not be removed by the Tribe.

10.03  Abandonment of the Tribe's Property.  All property that the Tribe is not required or allowed to leave on the Leased Premises shall, on the tenth (10th) day following termination, be conclusively deemed abandoned.  Abandoned property shall, at the election of Lessor, become the property of Lessor or be destroyed or removed by Lessor.

10.04  Liability for Cleanup Expenses.  The Tribe shall be liable for all costs and expenses incurred by Lessor to remove or destroy abandoned property and improvements not required or allowed to be left on the Leased Premises, and for the removal of trash or other debris left thereon.  In addition, nothing in this Lease shall relieve the Tribe of any obligation or liability for removal of hazardous substances (including wastes) or inappropriate fill material placed on the Leased Premises during the term of the Lease, regardless of when such hazardous substance (including waste) or inappropriate fill material is discovered. Nothing herein shall make the Tribe liable with respect to any fill material placed by the United States.

## ARTICLE 11

## EXECUTION AND MEMORANDUM OF LEASE

11.01  Execution and Counterparts.  This Lease is executed in two or more counterparts, each of which shall be an original, and all of which shall constitute one and the same instrument.

11.02  Recordation of Memorandum of Lease.  This Lease shall not be recorded.  Upon the occurrence or waiver of the occurrence of the conditions precedent described in paragraph 1.06, above, the parties shall execute in suitable form for recordation a memorandum of this Lease ("Memorandum of Lease"), which shall be recorded.

///

LESSOR:
CITY OF SAINT PAUL


_____

Linda Snow
City Manager
Date: _____


STATE OF ALASKA            )
                           ) ss.
THIRD JUDICIAL DISTRICT     )

    The foregoing instrument was acknowledged before me this ___ day of _____, 200__, by Linda Snow, City Manager of the City of Saint Paul, an Alaska municipal corporation, on behalf of the corporation.


                                  _____
                                    Notary Public in and for Alaska
                                    My Commission expires: _____

TENANT:
ALEUT COMMUNITY OF SAINT PAUL ISLAND



Title:
Date: _President_

STATE OF ALASKA          )
                         ) ss.
THIRD JUDICIAL DISTRICT   )

The foregoing instrument was acknowledged before me this 14ᵗʰ day of
_November_, 2007, by _Robert Melovidor_, _President_
of the Aleut Community of Saint Paul Island, a federally recognized tribal entity organized under
the Indian Reorganization Act.

Notary Public in and for Alaska
My Commission expires: 11/20/2009

TIDELANDS LEASE
PAGE 22 OF 22





**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

ORDINANCE 07-07

AN ORDINANCE OF THE CITY OF SAINT PAUL, ALASKA
1) APPROVING THE AGREEMENT FOR THE SMALL BOAT HARBOR PROJECT,
2) APPROVING A LEASE BETWEEN THE CITY AS LESSOR AND
THE ALEUT COMMUNITY OF SAINT PAUL ISLAND AS TENANT, AND
3) AUTHORIZING THE CITY MANAGER TO EXECUTE SAID AGREEMENT AND LEASE

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAINT PAUL:

Section 1. Classification.  This is a non-code ordinance.

Section 2. General Provisions.    The City Council finds that:

      A.     TDX is the Native Village corporation, the City is the local municipal governmental entity, and the Tribe is the federally recognized tribal entity for Saint Paul Island, Alaska.  In 1988 TDX and the City entered into an agreement ("1988 Settlement Agreement"), which (i) finally resolved all land claims between them on Saint Paul Island and (ii) recognized certain land entitlements of the Tribe on Saint Paul Island.

      B.     The City and TDX are parties to litigation concerning the 1988 Settlement Agreement in the United States District Court for the District of Alaska at Anchorage entitled *City of Saint Paul v. Donald Evans, et al.*, Case No. A97-0181 Civil ("Litigation").  In the Litigation the 1988 Settlement Agreement has been finally determined (i) to be valid and enforceable against the City by TDX in accordance with its terms and (ii) to have been materially breached by the City.  However, matters remain at issue in the Litigation which, among other things, affect land entitlements in the Village Cove Harbor area of St. Paul Island ("Village Cove Harbor").

      C.     The Tribe has certain rights and interests in certain uplands in the Village Cove Harbor Area, directly under the Transfer of Property Agreement ("TOPA") dated February 10, 1984, indirectly under the Settlement Agreement, and directly under an Agreement between the Tribe and TDX dated March 5, 1987, as amended  ("1987 Agreement").

      D.     The City is the local sponsor of a project ("Project") of the United States Army Corps of Engineers ("Corps") involving the construction of General Navigation Features ("GNF") and Local Service Facilities ("LSF") for a small boat harbor ("Small Boat Harbor") in the Village Cove Harbor, which (i) is generally described in the Corps General Reevaluation Report, Saint Paul Small Boat Harbor, dated February 2006 ("GRR"), and (ii) has been clarified in the Corps' August 11, 2006 letter to TDX' legal counsel.

      E.     The Corps has required the City to acquire certain real property interests in Village Cove Harbor from TDX before it will allow construction of the Project to commence, and the City, TDX and the Tribe have reached an agreement to satisfy such requirement.  TDX has rejected compensation for such interests and refused to grant them except upon certain terms and conditions set forth in the agreement.

F.    The long-term lease to the Tribe of City tidelands for nominal rent is appropriate given (i) TDX' claim to the tidelands to be conveyed to the City by the state, (ii) the Tribe's claims to some of those tidelands through TDX, and (iii) the services provided to the community by the Tribe. These considerations make an appraisal of the fair market rent of the property to be leased unnecessary.

G.    These findings are made in connection with an attempt to compromise claims set forth above and are not to be admissible against the City in any litigation to prove liability for and invalidity of such claims or their amounts.

Section 3.  Approval.  The Partial Settlement Agreement For The Small Boat Harbor Project between TDX, the City and the Tribe, a copy of which excluding some exhibits is attached hereto as Exhibit A, (herein "Agreement") is approved and ratified.  The Tidelands Lease between the City and the Tribe which is attached as Exhibit D to the Agreement (herein "Lease") is approved and ratified.

Section 4.  Authorization.  The City Manager is authorized to (a) execute an Agreement and a Lease which materially conform to the exhibits to this ordinance, (b) perform all other actions necessary to execute and deliver the Agreement and all other documents necessary to close and effect the transactions described therein and (c) extend the time for closing of the Agreement by not more than 60 days.

Section 5.  Effective Date.  This ordinance shall become effective immediately following its adoption by the City Council.

| | |
|---|---|
| First reading: | October 11, 2007 |
| Second reading: | October 24, 2007 |
| Public hearing: | October 24, 2007 |

ADOPTED BY A DULY CONSTITUTED QUORUM OF THE COUNCIL OF THE CITY OF SAINT PAUL THIS 24th DAY OF October , 2007.

Simeon Swetzof, Jr., Mayor

ATTEST:

Phyllis Swetzof, City Clerk

**Exhibit E**

**Resolution No. PZ-07-01 of the Planning and Zoning Commission of the City of Saint Paul**



**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

RESOLUTION PZ-07-01

A RESOLUTION OF THE PLANNING AND ZONING COMMISSION OF THE
CITY OF SAINT PAUL RECOMMENDING APPROVAL OF THE
VACATIONS AND RELOCATIONS OF TWO PUBLIC EASEMENTS
CURRENTLY LOCATED IN THE ST. PAUL HARBOR AREA ON TIDELANDS
OWNED BY THE STATE OF ALASKA AND LEASED TO THE
TANADGUSIX CORPORATION
BY THE ALASKA DEPARTMENT OF NATURAL RESOURCES

WHEREAS, under the laws of the State of Alaska, the City of Saint Paul ("City") is the planning, platting and zoning authority for the City and incorporating all of St. Paul Island, Alaska; and,

WHEREAS, the City regulates the St. Paul Island Harbor and is the Local Sponsor in a United States Army Corps of Engineers (COE) Project Cooperative Agreement to develop a new Small Boat Harbor, which includes the construction of a new breakwater on ATS 1472 and a new boat launch ramp on tidelands to be conveyed to the City by the Alaska Department of Natural Resources (DNR); and,

WHEREAS, the Tanadgusix Corporation (TDX), is the Lessee of ATS 1472 and wishes to vacate the 50' public access easement located along the eastern boundary of ATS 1472 and relocate this easement to the tidelands along the centerline of the new breakwater to be constructed by the COE immediately west of the current easement location; and,

WHEREAS, TDX is also the Lessee of ATS 1399 and also wishes to vacate the 50' public access easement located along the easterly side of ATS 1399 and relocate this easement to the tidelands along the centerline of the new boat launch ramp to be built within the Small Boat Harbor; and,

WHEREAS, the two vacations and relocations of the public access easements described above will provide equal and better public access for the St. Paul Island Harbor, inclusive of the new Small Boat Harbor;

NOW, THEREFORE, BE IT RESOLVED that the Planning Commission of the City of Saint Paul hereby recommends that the City Council of the City of Saint Paul approve the vacations and relocations of the two existing 50' easements as described above, conditioned upon development of the Small Boat Harbor by the COE and the Local Sponsor, and

BE IT FURTHER RESOLVED that the Planning Commission requests that the City Council of the City of Saint Paul urge DNR to approve the vacations and relocations of the two 50' easements as described above through an administrative process to expedite the approval process to meet the Corps of Engineers small boat harbor development schedule.

PASSED, APPROVED AND ADOPTED BY A MAJORITY VOTE OF THE PLANNING COMMISSION OF THE CITY SAINT PAUL THIS 25TH DAY OF OCTOBER 2007.

Stephen Senisch, Chairman

ATTEST:

Phyllis A. Swetzof, City Clerk

Exhibit E
Page ___1___ of ___1___

**Exhibit F**

**Resolution No. 07-03 of the City Council of the City of Saint Paul**



**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

RESOLUTION 07-03

A RESOLUTION OF THE CITY OF SAINT PAUL APPROVING THE VACATIONS AND
RELOCATIONS OF TWO PUBLIC EASEMENTS CURRENTLY LOCATED IN THE
ST. PAUL HARBOR AREA ON TIDELANDS OWNED BY THE STATE OF ALASKA AND LEASED TO
THE TANADGUSIX CORPORATION
BY THE ALASKA DEPARTMENT OF NATURAL RESOURCES

WHEREAS, under the laws of the State of Alaska, the City of Saint Paul ("City") is the planning, platting and zoning authority for the City and incorporating all of St. Paul Island, Alaska; and,

WHEREAS, the City regulates the St. Paul Island Harbor and is the Local Sponsor in a United States Army Corps of Engineers (COE) Project Cooperative Agreement to develop a new Small Boat Harbor, which includes the construction of a new breakwater on ATS 1472 and a new boat launch ramp on tidelands to be conveyed to the City by the Alaska Department of Natural Resources (DNR); and,

WHEREAS, the Tanadgusix Corporation (TDX), is the Lessee of ATS 1472 and wishes to vacate the 50' public access easement located along the eastern boundary of ATS 1472 and relocate this easement to the centerline of the new breakwater to be constructed by the COE immediately west of the current easement location; and,

WHEREAS, TDX is also the Lessee of ATS 1399 and also wishes to vacate the 50' public access easement located along the east side of ATS 1399 and relocate this easement immediately waterward of the new boat launch ramp to be built within future City tidelands containing the Small Boat Harbor; and,

WHEREAS, the two vacations and relocations of the public access easements described above will provide equal and better public access for the St. Paul Island Harbor, inclusive of the new Small Boat Harbor;

NOW, THEREFORE, BE IT RESOLVED that the City of Saint Paul hereby approves the vacations and relocations of the two existing 50' easements as described above and conditioned upon development of the Small Boat Harbor by the COE and the Local Sponsor, and

BE IT FURTHER RESOLVED that the City of Saint Paul urges DNR to approve the vacations and relocations of the two 50' easements as described above through an administrative process to expedite the approval process to meet the Corps of Engineers small boat harbor development schedule.

PASSED, APPROVED AND ADOPTED BY A MAJORITY VOTE OF THE COUNCIL OF THE CITY
SAINT PAUL THIS ___18th___ DAY OF APRIL 2007.

Simeon Swetzof, Jr., Mayor

ATTEST:

Phyllis A. Swetzof, City Clerk

**Exhibit F**
Page ___1___ of ___1___

# Exhibit G

## Unanimous Action by the Board of Directors of TDX

### TANADGUSIX CORPORATION
### RESOLUTION 08-03
### ST. PAUL SMALL BOAT HARBOR (SBH) AGREEMENT

I, Constance Bergo, of Tanadgusix (TDX) Corporation, hereby certify that the following is true and exact extract of a resolution adopted at a TDX Special Board Meeting of the Directors of said corporation held on December 5, 2007.

**Whereas,** the Company has negotiated an Agreement for the Small Boat Harbor Project – St. Paul Island, Alaska ("Agreement") with the City of St. Paul, an Alaska municipal corporation, and The Aleut Community of St. Paul Island, a federally recognized tribal entity organized under the Indian Reorganization Act, on mutually acceptable terms and condition; and

**Whereas,** Linda Snow, City Manager, in her letter dated December 4, 2007 to Gerald Jennings, Chief, State of Alaska Department of Natural Resources (DNR), made a commitment on the settlement and agreed to the tidelands solution in the Small Boat Harbor and ask DNR to vacate the old shore line easement; and,

**Whereas,** It is recommended that a Conditional Delivery Cover Letter requires the SBH agreement be subject to conditions precedent as stated in a letter from Terry Turner with Turner & Mede, said letter shall be attached to the Small Boat Harbor Agreement; and,

**Therefore be it resolve,** the settlement Small Boat Harbor Agreement is approved with the understanding of the commitment made by Linda Snow, as the City Manager of St. Paul, in her letter dated December 4, 2007 to Gerald Jennings, Chief, State of Alaska Department of Natural Resources (DNR), voicing the Cities agreement and asking DNR to vacate the old shore line easements. Furthermore, it is subject to the condition precedent as stated in the Conditional Delivery Cover Letter from Terry Turner with Tuner & Mede, said letter shall be attached to the Small Boat Harbor Agreement. Ron Philemonoff, Chairman / CEO of TDX is authorized and directed to sign said agreement.

Duly passed this 5th day of December 2007 by the Board of Directors with 7 votes for, 0 votes against, and 2 not voting/absent.

Tanadgusix Corporation
Ron Philemonoff, Chairman / CEO


ATTEST:

Constance Bergo, Secretary/Treasurer

**Exhibit H**

**Action by Majority of Tribal Council Members**



## Aleut Community of St. Paul Island
### Tribal Government
2050 Venia Minor Road • P.O. Box 86
St. Paul Island, Alaska 99660-0086
Phone: (907) 546-3200 • Fax: (907) 546-3254

President
Robert W. Melovidov, Sr.
Vice President

Secretary/Treasurer
Jessica Mata Bukovishnikoff
Council Members
Maxim Buterin, Jr.
Carol A. Melovidov
Dustin Jones
Thomas Bourdukofsky

### Resolution 2007-21

A RESOLUTION OF THE TRIBAL GOVERNMENT OF ST. PAUL ISLAND
1) APPROVING THE AGREEMENT FOR THE SMALL BOAT HARBOR PROJECT,
2) APPROVING A LEASE BETWEEN THE CITY AS LESSOR AND
THE ALEUT COMMUNITY OF SAINT PAUL ISLAND AS TENANT, AND
3) AUTHORIZING THE TRIBAL PRESIDENT TO EXECUTE SAID AGREEMENT AND LEASE

BE IT ORDAINED BY THE COUNCIL OF THE ALEUT COMMUNITY OF ST. PAUL:

A. TDX is the Native Village corporation, the City is the local municipal governmental entity, and the Tribe is the federally recognized tribal entity for Saint Paul Island, Alaska. In 1988 TDX and the City entered into an agreement ("1988 Settlement Agreement"), which (i) finally resolved all land claims between them on Saint Paul Island and (ii) recognized certain land entitlements of the Tribe on Saint Paul Island.

B. The City and TDX are parties to litigation concerning the 1988 Settlement Agreement in the United States District Court for the District of Alaska at Anchorage entitled *City of Saint Paul v. Donald Evans*, et al., case No. A97-0181 Civil ("Litigation"). In the Litigation the 1988 Settlement Agreement has been finally determined (i) to be valid and enforceable against the City by TDX in accordance with its terms and (ii) to have been materially breached by the City. However, matters remain at issue in the Litigation which, among other things, affect land entitlement in the Village Cove Harbor area of St. Paul Island ("Village Cove Harbor").

C. The Tribe has certain rights and interests in certain uplands in the Village Cove Harbor Area, directly under the Transfer of Property Agreement ("TOPA") dated February 10, 1984, indirectly under the Settlement Agreement, and directly under an Agreement between the Tribe and TDX dated March 5, 1987, as amended ("1987 Agreement").

D. The City is the local sponsor of a project ("Project") of the United States Army Corps of Engineers ("Corps") involving the construction of General Navigation Features ("GNF") and Local Services Facilities ("LSF") for a small boat harbor ("Small Boat Harbor") in the Village Cove Harbor, which (i) is generally described in the Corps General reevaluation Report, Saint Paul Small Boat Harbor, dated February 2006 ("GRR"), and (ii) has been clarified in the Corps' August 11, 2006 letter to TDX' legal counsel.

E. The Corps has required the City to acquire certain real property interests in Village Cove Harbor from TDX before it will allow construction of the Project to commence, and the City, TDX and the Tribe have reached an agreement to satisfy such requirement. TDX has rejected compensation for such interests and refused to grant them except upon certain terms and conditions set forth in the agreement.

F. The long-term lease to the Tribe of City tidelands for nominal rent is appropriate given (i) TDX' claim to the tidelands to be conveyed to the City by the state (ii) the Tribe's claims to some of those tidelands through TDX, and (iii) the services provided to the community by the Tribe. These considerations make an appraisal of the fair market rent of the property to be leased unnecessary.



**Aleut Community of St. Paul Island**
**Tribal Government**
2050 Venia Minor Road • P.O. Box 86
St. Paul Island, Alaska 99660-0086
Phone: (907) 546-3200 • Fax: (907) 546-3254

President
Robert W. Melovidov, Sr.
Vice President

Secretary/Treasurer
Jessica Mata Nukovishnikoff
Council Members
Maxim Buterin, Jr.
Carol A. Melovidov
Dustin Jones
Thomas Bourdukofsky

G.    These findings are made in connection with an attempt to compromise claims set forth above and are not to be admissible against the Tribe, TDX or the City in any litigation to prove liability for and invalidity of such claims of their amounts.

Approval. The Partial Settlement Agreement for the Small Boat Harbor Project between TDX, the City and the Tribe, a copy of which excluding some exhibits is attached hereto as Exhibit A, (herein "Agreement") is approved and ratified. The tidelands Lease between the City and the Tribe which is attached as Exhibit D to the Agreement (herein "Lease") is approved and ratified.

Authorization. The Tribal President is authorized to (a) execute an Agreement and a Lease which materially conform to the exhibits to this resolution, (b) perform all other actions necessary to execute and deliver the Agreement and all other documents necessary to close and effect the transactions described therein and (c) extend the time for closing of the Agreement by not more than 60 days.

Effective Date. This resolution shall be effective immediately following its adoption by the Tribal Council.

ADOPTED BY A DULY CONSTITUED QUORUM OF THE COUNCIL OF THE TRIBAL GOVERNMENT OF ST. PAUL ISLAND THIS _____26_____ DAY OF _October_, 2007.

Robert W. Melovidov, President

CONSENT JUDGMENT
EXHIBIT A    Page 70

**Exhibit I**

**Ordinance No. 07-07 of the City Council of the City of Saint Paul**



**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

ORDINANCE 07-07

AN ORDINANCE OF THE CITY OF SAINT PAUL, ALASKA
1) APPROVING THE AGREEMENT FOR THE SMALL BOAT HARBOR PROJECT,
2) APPROVING A LEASE BETWEEN THE CITY AS LESSOR AND
THE ALEUT COMMUNITY OF SAINT PAUL ISLAND AS TENANT, AND
3) AUTHORIZING THE CITY MANAGER TO EXECUTE SAID AGREEMENT AND LEASE

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAINT PAUL:

Section 1. Classification. This is a non-code ordinance.

Section 2. General Provisions.   The City Council finds that:

A.     TDX is the Native Village corporation, the City is the local municipal governmental entity, and the Tribe is the federally recognized tribal entity for Saint Paul Island, Alaska.  In 1988 TDX and the City entered into an agreement ("1988 Settlement Agreement"), which (i) finally resolved all land claims between them on Saint Paul Island and (ii) recognized certain land entitlements of the Tribe on Saint Paul Island.

B.     The City and TDX are parties to litigation concerning the 1988 Settlement Agreement in the United States District Court for the District of Alaska at Anchorage entitled *City of Saint Paul v. Donald Evans, et al.*, Case No. A97-0181 Civil ("Litigation").  In the Litigation the 1988 Settlement Agreement has been finally determined (i) to be valid and enforceable against the City by TDX in accordance with its terms and (ii) to have been materially breached by the City.  However, matters remain at issue in the Litigation which, among other things, affect land entitlements in the Village Cove Harbor area of St. Paul Island ("Village Cove Harbor").

C.     The Tribe has certain rights and interests in certain uplands in the Village Cove Harbor Area, directly under the Transfer of Property Agreement ("TOPA") dated February 10, 1984, indirectly under the Settlement Agreement, and directly under an Agreement between the Tribe and TDX dated March 5, 1987, as amended  ("1987 Agreement").

D.     The City is the local sponsor of a project ("Project") of the United States Army Corps of Engineers ("Corps") involving the construction of General Navigation Features ("GNF") and Local Service Facilities ("LSF") for a small boat harbor ("Small Boat Harbor") in the Village Cove Harbor, which (i) is generally described in the Corps General Reevaluation Report, Saint Paul Small Boat Harbor, dated February 2006 ("GRR"), and (ii) has been clarified in the Corps' August 11, 2006 letter to TDX' legal counsel.

E.     The Corps has required the City to acquire certain real property interests in Village Cove Harbor from TDX before it will allow construction of the Project to commence, and the City, TDX and the Tribe have reached an agreement to satisfy such requirement.  TDX has rejected compensation for such interests and refused to grant them except upon certain terms and conditions set forth in the agreement.

        F.      The long-term lease to the Tribe of City tidelands for nominal rent is appropriate given (i) TDX' claim to the tidelands to be conveyed to the City by the state, (ii) the Tribe's claims to some of those tidelands through TDX, and (iii) the services provided to the community by the Tribe. These considerations make an appraisal of the fair market rent of the property to be leased unnecessary.

        G.      These findings are made in connection with an attempt to compromise claims set forth above and are not to be admissible against the City in any litigation to prove liability for and invalidity of such claims or their amounts.

Section 3. Approval. The Partial Settlement Agreement For The Small Boat Harbor Project between TDX, the City and the Tribe, a copy of which excluding some exhibits is attached hereto as Exhibit A, (herein "Agreement") is approved and ratified. The Tidelands Lease between the City and the Tribe which is attached as Exhibit D to the Agreement (herein "Lease") is approved and ratified.

Section 4. Authorization. The City Manager is authorized to (a) execute an Agreement and a Lease which materially conform to the exhibits to this ordinance, (b) perform all other actions necessary to execute and deliver the Agreement and all other documents necessary to close and effect the transactions described therein and (c) extend the time for closing of the Agreement by not more than 60 days.

Section 5. Effective Date. This ordinance shall become effective immediately following its adoption by the City Council.

| | |
|---|---|
| First reading: | October 11, 2007 |
| Second reading: | October 24, 2007 |
| Public hearing: | October 24, 2007 |

ADOPTED BY A DULY CONSTITUTED QUORUM OF THE COUNCIL OF THE CITY OF SAINT PAUL THIS _24th_ DAY OF _October_, 2007.

Simeon Swetzof, Jr., Mayor

ATTEST:

Phyllis Swetzof, City Clerk

# Turner & Mede, P.C.
Attorneys at Law

1500 West 33rd Avenue, Suite 200
Anchorage, Alaska 99503-3502
Telephone:   (907) 276-3963
Facsimile:   (907) 277-3695

Natalie A. Cale
William F. Mede
Norman P. Resnick
Terrance A. Turner
Patricia A. Vecera

December 5, 2007

Law Offices of Ronald L.  Baird
P.  O.  Box 100440
Anchorage, Alaska   99510-0440

Attention:      Ronald L.  Baird

Aleut Community of Saint Paul Island
4300 B Street, Suite 402
Anchorage, AK  99503

Attention:      Patrick Baker

Re:      SBH Agreement between TDX, City and Tribe

Dear Ron:

        Attached herewith is a copy of the above-referenced SBH Agreement that has
been executed by TDX and previously executed by the City and Tribe.   This completely
executed Agreement is being delivered to the City and Tribe subject to the following conditions
precedent.  If the City does not unqualifiedly accept such conditions precedent by so advising
TDX through me in writing within five (5) days, TDX' delivery of this executed SBH
Agreement shall be null and void and of no legal effect.

        Such conditions precedent are:

        (a)      the City unqualifiedly agrees in writing to use its best efforts to assist
                TDX and the Tribe to induce DNR to agree that the proposed public
                access easements along the Westerly Breakwater and Ramp of the Corps'
                Small Boat Harbor Project ("Project") will be the *sole* public access
                easements for the new ATS 1667, Tract B (or any substitute tidelands
                parcel) that defines the Small Boat Harbor Tidelands to be conveyed to the
                City from DNR for such Project; and

CONSENT JUDGMENT
EXHIBIT A       Page 74

Law Offices of Ronald L. Baird
Aleut Community of Saint Paul Island
Page No. 2
December 5, 2007

(b)    the City unqualifiedly agrees in writing that notwithstanding the use of the "Current MHWL" as the Tidelands boundary in the proposed plat for ATS 1667, Tract B (or any substitute tidelands parcels), the City will utilize the 1995 MHWL as the tidelands boundary for all purposes with respect to ATS 1667, Tract B, in its dealings and leases with, and conveyances to, TDX and the Tribe involving any part of ATS 1667, Tract B.

Alternatively, TDX insists on such language being included in the SBH Agreement before TDX will execute and deliver it.

Very truly yours,

TURNER & MEDE, P.C.
Attorneys for Tanadgusix Corporation

Terrance A. Turner

TAT/eah
Encls.
cc:    Tanadgusix Corporation (w/o encls.)
           Attn:   Ron P. Philemonoff
       Law Offices of Douglas F. Strandberg (w/o encls.)
           Attn:   Douglas F. Strandberg
       Morriset Schlosser Jozwiak McGaw (w/o encls.)
           Attn:   Thomas Schlosser



**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

December 7, 2007

Terrance A. Turner
Turner & Mede, P.C.
1500 West 33rd Avenue, Suite 200
Anchorage, Alaska 99503-3502

    Subject:    Small Boat Harbor Agreement between Tanadgusix
                 Corporation, City of Saint Paul, and Aleut Community of
                 Saint Paul Island

Dear Mr. Turner:

    Your letter of December 5, 2007 has been forwarded to me.  The City
unqualifiedly accepts the conditions set forth in your letter.

                 Sincerely,

                 Linda L. Snow
                 City Manager

Cc:  Ronald Baird

CONSENT JUDGMENT
EXHIBIT A    Page 76



**CITY OF SAINT PAUL**
P.O. BOX 901
SAINT PAUL ISLAND, ALASKA
99660-0901
(907) 546-2331
FAX (907) 546-3188

RESOLUTION  07-12

**A RESOLUTION OF THE CITY OF SAINT PAUL RATIFYING THE CITY MANAGER'S ACTION TO UNQUALIFIEDLY ACCEPT THE CONDITIONS PRECEDENT TO FINAL APPROVAL OF THE SMALL BOAT HARBOR AGREEMENT.**

WHEREAS, the City Council adopted Ordinance 07-07, on October 24, 2007, approving the agreement for the Small Boat Harbor Project, inclusive of a lease between the City as Lessor and the Aleut Community of St. Paul Island as Tenant, and authorizing the City Manager to execute said agreement and lease; and

WHEREAS, the City Manager signed said agreement, whereupon it was received and signed by the President of the Tribal Council, as authorized by the Tribal Council, and

WHEREAS, the Board of Directors of the Tanadgusix Corporation (TDX) authorized their Chief Executive Officer to sign said agreement; and

WHEREAS, the City received the signed document with a letter dated December 5, 2007 from attorneys-at-law for TDX, setting forth conditions which, if not agreed to, would have nullified the signature by the CEO; and

WHEREAS, the City Manager responded within the time period required in the letter, agreeing unqualifiedly to the conditions set;

WHEREAS, Ordinance 07-07 also states that the City Manager is authorized to perform all other actions necessary to execute and deliver the agreement necessary to close and effect the transactions described;

NOW, THEREFORE, BE IT RESOLVED that the Council of the City of Saint Paul hereby ratifies the action of the City Manager and unqualifiedly accepts the conditions precedent in the letter from Turner and Mede, attached to this resolution.

PASSED, APPROVED AND ADOPTED BY A MAJORITY VOTE OF THE CITY COUNCIL OF THE CITY OF SAINT PAUL THS 28th DAY OF DECEMBER 2007.

_____
Simeon Swetzof, Jr., Mayor

ATTEST:

_____ 12/26/07
Phyllis A. Swetzof, City Clerk       Date

CONSENT JUDGMENT
EXHIBIT A      Page 77